161 N.J. Super. 301 (1978)
391 A.2d 928
CARTEL CAPITAL CORP., AND EVAN FUNDING CORP., PLAINTIFFS,
v.
FIRECO OF NEW JERSEY, DEFENDANT-APPELLANT, AND ANSUL, INC., DEFENDANT-RESPONDENT, AND COUNTRY BURGER OF RAMSEY, INC., PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
FIRECO OF NEW JERSEY, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 6, 1978.
Decided August 4, 1978.
*303 Before Judges LORA, SEIDMAN and MILMED.
Mr. Leonard J. Tafro argued the cause for appellant and cross-respondent Fireco of New Jersey (Messrs. Adams, Adubato, Tafro & Connelly, attorneys; Mr. John D. Potenza on the brief).
Mr. Raymond J. Fleming argued the cause for respondent and cross-appellant Country Burger of Ramsey, Inc. (Messrs. Feuerstein, Sachs & Maitlin, attorneys).
Mr. Kent A. Losche appeared for respondent Ansul, Inc. (Messrs. Harwood, Lloyd, Ryan, Coyle & Wulster, attorneys).
The opinion of the court was delivered by SEIDMAN, J.A.D.
*304 This appeal arises out of a lawsuit instituted by Country Burger of Ramsey, Inc (hereinafter referred to as plaintiff), to recover for property damage sustained in a fire that occurred on November 30, 1973 in a fast food restaurant which it owned and operated. The claim was asserted against Ansul, Inc., and Fireco of New Jersey (Fireco), respectively the manufacturer and the retailer of a fire extinguishing system installed in the restaurant by the latter. Plaintiff alleged that the equipment malfunctioned when a fire broke out at a grill, as a result of which the fire spread, causing extensive damage.[1] The action against Ansul was for strict liability in tort, based upon an alleged design defect in the actuating mechanism of the fire extinguishing system. Fireco was charged not only with strict liability in tort, but also with negligence in servicing, inspecting and maintaining the system.
On the date scheduled for trial counsel for Ansul informed the court of its agreement to pay plaintiff $50,000 in full settlement of the claim against it. At the same time it abandoned its crossclaim against Fireco for contribution and indemnification and also successfully moved, over Fireco's objection, for a dismissal of the latter's like crossclaim. The trial then proceeded on plaintiff's causes of action against Fireco for negligence and strict liability in tort. Ansul remained in the case as a party defendant, although its counsel did not participate in and was not present during the trial.[2] *305 The issue of Ansul's liability for the defect was submitted to the jury for the apportionment of fault under the comparative negligence statute, N.J.S.A. 2A:15-5.1 et seq.
In response to special interrogatories propounded by the trial judge at the conclusion of the trial in conjunction with his charge, the jury found both Fireco and plaintiff guilty of negligence that was "a proximate cause of the incident," and also found that "the fire extinguisher equipment [was] defectively designed by the defendant Ansul," which defect was "a proximate cause of plaintiff's damages." The jury allocated fault among the parties, pursuant to the trial judge's direction to take "the combined fault of the defendants and plaintiff as a total of 100%," as follows: 29% was allocated to Ansul; 30%, to Fireco; and 41%, to plaintiff. Plaintiff's damages were found to be in the amount of $113,400.
The trial judge thereafter molded the verdict. In an oral opinion, he stated that Ansul's percentage of fault (29%) must be added to Fireco's 30% (representing only the negligence cause of action against it).[3] The latter's total percentage of fault was thus increased to 59%. He then ruled that as plaintiff's negligence was now not greater than the total allocation of fault to Fireco, it was not barred from recovery under the comparative negligence statute. But he found further that since plaintiff could not have double payment on its product liability claim, it was entitled to receive from *306 Fireco only 30% of the total damages determined by the jury, or $34,020, plus interest and costs. The entry of an accordant judgment was ordered. The judgment also incorporated the dismissal of the claims of Cartel Capital Corp. and Evan Funding Corp., and, for the stated reason that "there is no legal basis for indemnification by Fireco of New Jersey against Ansul, Inc., under either the theory of common law indemnity or products liability," the dismissal of Fireco's crossclaims against Ansul.
Fireco complains on appeal only of the utilization of "the negligence attributed to the settling defendant for anything save only deduction from the verdict," and, "assuming arguendo that Ansul's settlement did not eliminate its attributed percentage of negligence from the case," of the trial judge's combining "the negligence of Fireco with that of Ansul when measuring against the comparative negligence of Country Burger."[4] Plaintiff's response is that the court below correctly added "the percentages of responsibility in determining the plaintiff's amount of recovery." It argues that "[i]n any comparative negligence case the percentage of fault of all of the defendants should be combined." On its cross-appeal, plaintiff contends that the trial judge erred "in reducing the judgment by more than the plaintiff's percentage of fault."
For reasons that follow, we reverse the judgment except as it relates to the dismissal of the claims of Cartel Capital Corporation and Evan Funding Corporation. The matter must be remanded for a new trial on issues that will be developed in more detail hereinafter.
*307 There is no dispute that the fire extinguishing system manufactured by Ansul was designed to put out fires in restaurant grills like those in plaintiff's place of business. The component parts were tanks or receptacles containing a chemical powder that was the extinguishing agent, a cylinder of carbon dioxide gas, and an actuating mechanism. When the latter was triggered, the gas would be released through piping into the tank or tanks, exerting a downward force upon the powder, which would be expelled through nozzles onto the area of the fire. The actuating mechanism could be set so as to operate either automatically through a fusable link that heat would melt, or manually by pulling a handle. In either case, a spring would be released which would strike a lever in the carbon dioxide container, causing the gas to flow into the tank of powder.
Although the proofs were in conflict, the thrust of plaintiff's case was essentially as follows: Fireco installed the Ansul system in the premises in question in 1967. At that time there were two nozzles over each grill and additional ones over deep fat fryers. The system was checked by Fireco every six months. In 1969, after the system was actuated apparently by accident, Fireco installed new cables and fusable links. The actuating mechanism handle was replaced by Fireco in 1972 after a fire in the kitchen. More nozzles were added earlier in 1973 when an additional grill was installed.
On November 30, 1973, at about 9:30 P.M., a stack of paper plates somehow fell onto an unattended hot grill and caught fire. An accumulation of grease under and around the grill also ignited. One of the employees tried unsuccessfully to put out the blaze with flour. The handle of the fire extinguishing system was pulled, but nothing came out of the nozzles. Portable fire extinguishers apparently did not work. The fire spread rapidly, causing considerable damage to the premises.
An examination of the equipment by plaintiff's expert after the fire indicated to him that the actuating mechanism *308 had failed because of the manner in which the handle had been replaced by Fireco's employee allegedly in 1972. Contrary to instructions in Ansul's maintenance manual, a screw was inserted through the wrong side of a shaft. As a result, the handle, when rotated, made contact with the housing and was prevented from turning sufficiently to cause the spring to strike the lever and release the gas. The error also interfered with the automatic operation of the system.
In the expert's opinion the handle shaft should have been so designed by the manufacturer as to prevent the insertion of the screw from either side. Specifically, the shaft should have been drilled only part way through, thus accepting the screw from one side only and eliminating the possibility of an "unknowing technician" erroneously inserting the screw at the opposite side of the shaft. The malfunction of the system, according to the expert, resulted from a combination of a design defect and "a repair or maintenance defect."
As indicated previously, plaintiff's complaint included a cause of action against both Ansul and Fireco for strict liability in tort. The jury evidently was satisfied from the proofs before it not only that Fireco and plaintiff had been guilty of negligence which was a proximate cause "of the incident," but also that the equipment had been defectively designed by Ansul and that the defect was a proximate cause of plaintiff's damages. Following the trial judge's instructions the jury determined the issues by responding to interrogatories and allocating the percentages of fault as set forth hereinabove.
We do not comprehend the trial judge's rationale in molding the verdict as he did. His apparent concept of Ansul's role was that the issue of Ansul's fault had to be submitted to the jury, despite the settlement, in order to implement the comparative negligence statute. This would be so in the ordinary negligence case because a percentage share of negligence must now be substituted for a pro rata share in matters of contribution among joint tortfeasors. Rogers v. Spady, 147 N.J. Super. 274, 277 (App. Div. *309 1977). Consequently, where a claimant in such case settles with a codefendant, "that percentage of negligence found attributable to the settling codefendant will be deducted from the verdict returned against the other codefendants found liable, i.e., the remaining joint tortfeasors will be liable for that percentage of negligence attributable to them." 147 N.J. Super. at 277. This presupposes, of course, that a plaintiff's percentage of negligence is not so great as to bar his recovery and also, if a plaintiff is entitled to recover, that his percentage of negligence has been first deducted from the quantum of loss as determined by the jury regardless of any consideration of negligence. N.J.S.A. 2A:15-5.2(b).
Here the jury's allocation of percentages was such that plaintiff's negligence (41%) was greater than that of Fireco (30%) and also greater than the "fault" attributed to Ansul (29%). The trial judge's quandary, when he came to the molding of the verdict, was that on those percentages plaintiff would have been barred entirely from recovery. He recognized that Fireco had been sued on two distinct causes of action, negligence and strict liability in tort. He expressed the view that plaintiff "could have been denied recovery on one cause of action and still recover on the other," and that "any jury award on either cause of action could be diminished to the extend [sic] that Plaintiff's own negligence or products misuse contributed to the happening of the incident in question." Nevertheless, he elected to add to Fireco's 30% (negligence) Ansul's 29% (strict liability in tort), thereby permitting a recovery by plaintiff.
All concerned obviously assumed at trial that the principle of comparative negligence was applicable to strict liability in tort. For that reason the jury was called upon to allocate percentages of fault not only to Fireco and plaintiff, but also to Ansul, notwithstanding the latter's settlement. But even if that assumption were sound, there was still no valid basis for the manner in which the trial judge molded the verdict. If he believed that in applying the *310 concept of comparative negligence it was necessary to combine the percentages of fault of the codefendants, he was in error. Under our statute a plaintiff's degree of negligence is measured against that of each individual defendant, not the combined negligence of all. See Rawson v. Lohsen, 145 N.J. Super. 71, 77 (Law Div. 1976). Rawson notes that the Wisconsin Supreme Court "has consistently interpreted this statutory language to preclude recovery under these circumstances," id. at 76, citing, among other cases from that jurisdiction, Soczka v. Rechner, 73 Wis.2d 157, 242 N.W.2d 910 (Sup. Ct. 1976). If, on the other hand, the trial judge thought that combining the percentages was appropriate because "if Ansul and Fireco had been sued on a strict liability basis only and the jury returned a verdict favorable to the Plaintiff, the verdict. whether collected against Fireco or Ansul, could only be collected once," then he confused recovery of a judgment with the collection thereof. Moreover, as will appear later, there may well be a question whether Ansul should have remained in the case at all, once it settled with plaintiff.
At the root of the matter are fundamental misconceptions and erroneous assumptions shared by the trial judge and counsel involving matters beyond the specific issues raised on this appeal, although the resolution of these issues  indeed, their relevancy  may depend on our recognition and disposition of the problems that exist. To that end, in order to achieve substantial justice in this case, we exercise our power to notice plain error not brought to the attention of either the trial court or ourselves by the parties. R. 2:10-2.
Our concern, in part, is over the applicability of comparative negligence to strict liability in tort, i.e., whether the jury should properly have been called upon to allocate a percentage of fault to Ansul for that purpose. A corollary problem is whether Ansul's liability was really relevant to any issue other than Fireco's possible entitlement to indemnification with respect to the product liability phase of the *311 case. There is a further issue, also in the area of strict liability in tort, of whether plaintiff's alleged contributory negligence should have been removed from the case as a matter of law. Additionally, it appears that all concerned failed properly to consider the effect of Ansul's settlement of the claim against it; particularly whether, by virtue thereof, strict liability in tort was eliminated as an issue in the case.
There was at the time of the trial no reported decisional law in this State extending the concept of comparative negligence to a product liability setting, although Ettin v. Ava Truck Leasing, Inc., 53 N.J. 463, 474 (1969), decided several years before the adoption of our comparative negligence statute, referred to a suggestion in current writings on the subject "that the doctrine of comparative negligence or fault should wholly replace contributory negligence not only in the field of ordinary negligence but also in the field of warranty or strict liability." Considering the state of the law on the subject we should not be critical of the trial judge and counsel in deeming strict liability in tort to be apportionable along with negligence.
But the recent decision of the Supreme Court in Cepeda v. Cumberland Engineering Co., 76 N.J. 152, 189 (1978), makes clear that the principle of comparative negligence has not yet been extended to strict liability in tort, and "until such time as consideration is given in this State to [such extension] the continuance of unreasonable voluntary exposure of oneself to a known danger as a defense to strict liability in tort seems a fair balance of justice and policy in this area." We therefore conclude that it was plain error for the trial judge here to have instructed the jury to include Ansul in its assessment of the extent of each party's fault, couched in terms of percentages.
Equally to the point is whether, in any event, plaintiff's negligence, on the facts of this case, could properly have been interposed by Fireco as a defense to the claim against it for strict liability in tort. On this issue the record is *312 difficult to follow. There is no doubt that Fireco was sued for both negligence and strict liability in tort, but not on the same theory. The negligence charge related to Fireco's installation and servicing of the system, specifically the manner in which the handle was replaced; the product liability claim, coextensive with that asserted against Ansul, was predicated on an alleged design defect. As to the latter claim, the jury was charged that to hold Fireco liable "for selling a defective product," the jury must find that "(1) the fire extinguisher system was not reasonably fit for ordinary use for which it was intended and was thus defective; (2) the defect existed at the time the product was sold to plaintiff, and (3) that the defect proximately caused damage to the plaintiff." We pass the correctness of the charge, the language of which, for no reason that we can fathom, differed significantly from that used with respect to Ansul.[5] The special interrogatory directed to Fireco's liability inquired only as to whether that defendant was guilty of negligence. As previously stated, the jury was separately asked to determine whether the equipment was "defectively designed by the defendant, Ansul Company," but solely in the context of the jury's apportionment of Ansul's fault.
With regard to plaintiff's alleged negligence, the trial judge's instructions made no distinction between the action against Fireco for negligence and that for strict liability in *313 tort for selling and installing an alleged defectively designed fire extinguishing system. As to each, plaintiff's duty was stated in terms of the ordinary negligence case, i.e., the exercise of "that degree of care which a reasonably, prudent person would have exercised under the circumstances existing at the time of the fire." Such instruction, if applicable to any other class of product liability cases, would clearly be inappropriate where a design defect underlies the cause of action. See Cepeda v. Cumberland Engineering Co., supra.
We are entirely satisfied that on the facts here present plaintiff's negligence, if any, would neither defeat recovery in strict liability in tort nor diminish its damages. Since, according to Cepeda, the principle of comparative negligence did not apply to that cause of action, the issue of diminution of damages would not arise. As for the bar of contributory negligence, the court stated in Cepeda, 76 N.J. at 185, that "it is implicit in Comment n [of the Restatement 2d, Torts, § 402A] and the generality of the cases that only a limited range of a plaintiff's conduct  not contributory negligence in the sense of mere carelessness or inadvertence  can be a defense to an action for strict liability in tort for injuries sustained as the result of a product defect, particularly if the defect is one of unsafe design" [emphasis supplied]. To constitute contributory negligence in such cases, it must appear from the facts that plaintiff's conduct consisted of the voluntary and unreasonable self-exposure to a known danger. Cepeda, supra at 188-190.
Here, Fireco's assertion that plaintiff's employees were negligent in such matters as stacking paper plates near an unattended hot grill and allowing grease to accumulate on the grill and surrounding area might have been material with respect to the cause of the fire. But plaintiff could not have had any forewarning that the system, the purpose of which was to extinguish fires regardless of how they were caused, would not function because of the consequences of an alleged design defect. Therefore, there could not as a matter *314 of law have been any voluntary exposure by plaintiff to a known danger, thus eliminating from the case any defense of contributory negligence insofar as it related to strict liability in tort.
While the prior jury found negligence on the part of both Fireco and plaintiff, the intermingling of negligence and strict liability in tort casts considerable doubt on what the findings would otherwise have been on the issues of negligence and contributory negligence. We have no way of knowing how the jury might have apportioned negligence between Fireco and plaintiff if Ansul had been excluded from its consideration of those matters. It is evident that there must be a remand for a new trial. Little, if anything, is salvageable from the previous trial.
The new trial will, of course, encompass the claim against Fireco for its alleged negligence, as well as the issues of contributory negligence and proximate cause. Comparative negligence will apply here.
We perceive no implication of Ansul as a joint tortfeasor in this aspect of the case. Its inclusion in the litigation was solely because of the strict liability in tort claim, which it settled. There is nothing in the record to suggest otherwise.
There remains, of course, the outstanding product liability claim against Fireco as the seller of the product. Since comparative negligence would not be applicable to it, Ansul is not needed in the case for that purpose. If Ansul's presence should be required, it would be only for indemnification in the event Fireco is found to be liable to the purchaser on account of the claimed defect in the product. But this raises a crucial issue that will have to be resolved below. It is whether the strict liability in tort claim against Fireco has continued vitality in light of the settlement effected by Ansul.
The particular question requiring resolution is whether, in a lawsuit involving an allegedly defective product, settlement by a plaintiff of its claim against the manufacturer of the product, who bears the "primary responsibility *315 for putting defective products in the stream of trade," Newmark v. Gimbel's Inc., 54 N.J. 585, 600 (1969), effectively bars further recovery against the seller of the product, who, if found liable to the purchaser, would be entitled to be indemnified by the manufacturer. Ruvolo v. U.S. Steel Corp., 139 N.J. Super. 578, 585 (Law Div. 1976); cf. Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55, 79 (1960).[6] See, e.g., Delta Tank Manufacturing Co. v. Weatherhead Co., 150 F. Supp. 525, 528 (N.D. Ohio 1957).
We prefer to express no opinion on this interesting and difficult subject. The issue was neither raised nor considered at the trial, nor was it argued on appeal. In fairness, the parties ought to be given a reasonable opportunity to argue the matter below, preferably on an appropriate preliminary motion directed to the issue, with fully researched supporting and opposing briefs. If the issue is resolved adversely to plaintiff, then the trial will proceed solely on the negligence cause of action; otherwise, of course, both causes of action will have to be tried. What part, if any, Ansul would play in the latter event is another matter to be considered and resolved at the trial level.
Carefully prepared instructions to the jury (the charge at the previous trial is not a useful model) and the use of appropriate special interrogatories should obviate any difficulty that might otherwise be encountered if the retrial should include both negligence and strict liability in tort, with comparative negligence applicable to the former but not to the latter.
Finally, we refrain from comment on how the amount of the settlement should be applied, if at all, to the verdict returned against Fireco, if it should be found liable. Any problem *316 that might arise in that regard can be dealt with at the trial level.
Reversed and remanded for further proceedings consistent with the foregoing. We do not retain jurisdiction.
NOTES
[1] This suit was consolidated with another in which the plaintiffs were Cartel Capital Corp. and Evan Funding Corp., the owners and lessors of the property in question. The pleadings were amended by the pretrial order to reflect that all defendants, whether direct or third-party, were to be deemed direct defendants and that each defendant crossclaimed against the other for contribution and indemnification. At trial, the complaint of Cartel Capital Corp. and Evan Funding Corp. was dismissed, leaving Country Burger of Ramsey, Inc., as the sole plaintiff.
[2] During a discussion of the proposed charge to the jury among the trial judge and the attorneys for plaintiff and Fireco, the latter's attorney pressed his claim for indemnification, insisting that he was entitled to it as a matter of law. Presumably by direction of the trial judge, all counsel, including Ansul's, appeared in court on the last trial date to argue the matter. However, the issue was not resolved, the trial judge merely stating that "I am inclined to feel that we may be able to cover the situation by the special interrogatories that was [sic] prepared." It is not clear from the record what transpired thereafter with respect to the matter, except that the ultimate judgment contained a dismissal with prejudice of all crossclaims filed by Fireco against Ansul.
[3] Although, with respect to Fireco's liability, the trial judge charged the jury on both negligence and "liability for selling a defective product," the special interrogatory applicable to that defendant was limited to a finding vel non of its negligence and of proximate cause.
[4] Although Fireco also appealed from that portion of the final judgment dismissing its crossclaim for indemnification against Ansul, the point is not argued in its brief. Ansul moved on that account to dismiss that phase of the appeal. We reserved decision on the motion until oral argument. Since our reversal of the judgment includes the dismissal of the crossclaim, the motion is, of course, denied. We express no opinion, however, on the merits of the crossclaim.
[5] The jury was instructed that to hold Ansul "liable in this case," it must determine:

(1) The product manufactured and designed by the defendant was not reasonably fit for ordinary use for which it was intended; (2) That the defect rose out of the design or manufacture while the product was in the control of the manufacturer; (3) That the defect proximately caused damage to the plaintiff; and (4) That the plaintiff was the ultimate purchaser or a reasonably foreseeable consumer or user.
Why the issue of a manufacturing defect was injected when the proofs established, if anything, only a defect in design is not explained.
[6] Ordinarily, to avoid circuity of action, it is preferable to have the plaintiff's cause of action if possible adjudicated in one action against manufacturer and retailer, and if the plaintiff sues alone, the manufacturer should be impleaded. Newmark v. Gimbel's Incorporated, supra.