LLOYD K. VAN HORN, PLAINTIFF-APPELLANT, v. WILLIAM BLANCHARD COMPANY, EPIC CONSTRUCTION COMPANY AND CHARLES C. HULL, INDIVIDUALLY AND/OR AS AGENT, SERVANT, AND/OR EMPLOYEE OF EPIC CONSTRUCTION COMPANY, DEFENDANTS-RESPONDENTS, AND ARGEE CONSTRUCTION COMPANY AND JOHN DOES (BEING FICTITIOUS NAMES) INDIVIDUALLY AND/OR AS AGENTS, SERVANTS, AND/OR EMPLOYEES OF WILLIAM BLANCHARD COMPANY, ARGEE CONSTRUCTION COMPANY, EPIC CONSTRUCTION COMPANY, OR OTHER UNKNOWN COMPANIES, INDIVIDUALLY, JOINTLY, SEVERALLY, AND/OR IN THE ALTERNATIVE, DEFENDANTS.

Argued February 24, 1981—Decided December 24, 1981.

*Laurence P. Bafundo* argued the cause for appellant (*Friedman & Tighe*, attorneys).

*Stephen G. Sweet* argued the cause for respondent (*Methfessel & Werbel*, attorneys).

The opinion of the Court was delivered by

CLIFFORD, J.

After a bifurcated trial in this negligence action the jury returned a verdict finding plaintiff fifty percent negligent, one defendant thirty percent negligent and a second defendant twenty percent negligent. The trial court molded the verdict and entered judgment in favor of defendants, and thereafter denied plaintiff's motion under *R.* 4:49–2 to amend the judgment. The Appellate Division affirmed, one judge dissenting, concluding that despite the fact that plaintiff's negligence was not greater than the combined negligence of defendants, recovery was barred under the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1 to –5.3. *Van Horn v. William Blanchard Co.*, 173

*N.J.Super.* 280 (1980).   Plaintiff appeals as of right, *R.* 2:2–1(a).
We affirm.

## I

On September 25, 1975 plaintiff, Lloyd K. Van Horn, was
employed by Beach Electric Company, a subcontractor on a
building site in Clinton, New Jersey.   The general contractor
was defendant William Blanchard Company (Blanchard).   De-
fendant Epic Construction Company (Epic) was another subcon-
tractor, and defendant Hull was an employee of Epic.[1]   On the
date in question plaintiff sustained injuries giving rise to this
suit when he slipped and fell on the job site while running into a
building to avoid a rain storm.   The cause of action was predi-
cated on defendants' failure to have maintained the building
entrance in a safe condition.

To guide it in its deliberations the jury was given special
interrogatories.   Its responses indicated that it found the negli-
gence of Van Horn, Blanchard and Epic jointly to have produced
the accident, whereas Hull was determined to be free of any
negligence.   Having been instructed that the combined negli-
gence, if there were any, should total one hundred percent, the
jury apportioned the negligence as follows: plaintiff, fifty per-
cent;   Blanchard, thirty percent;   and Epic, twenty percent.
Because the plaintiff's negligence exceeded the individual negli-
gence of either of the joint tortfeasors, the trial court entered
judgment for defendants.

On appeal plaintiff argued that "[i]n multiple defendant cases,
in order to avoid harsh and unfair results, the negligence of an
individual plaintiff must be compared to the combined negli-
gence of the several tortfeasors."   According to plaintiff he was
entitled to a judgment on liability inasmuch as his negligence
(fifty percent) was not greater than the aggregated negligence
(fifty percent) of the two tort feasors.

---

[1]The record is uninformative as to the fate of defendants Argee Construc-
tion Company and John Does in this litigation.

A majority of the Appellate Division rejected this contention, holding that the Comparative Negligence Act "makes it clear that plaintiff's degree of negligence must be measured against that of each individual defendant, not the combined negligence of all defendants." 173 *N.J.Super.* at 282. The dissenting judge's view, with which our dissenting colleagues are in substantial agreement, was that a plaintiff's right to recover should be determined by combining defendants' percentages of negligence. Under that approach there would first be a determination of whether a plaintiff is entitled to recover at all by reference to his negligence alone; if that percentage is not greater than fifty percent, recovery is allowed. All defendants found to be negligent in any degree would be required "to contribute to the actual recovery to which plaintiff would be entitled in an amount equal to [each defendant's] own percentage multiplied by the total verdict." *Id.* at 287 (dissenting opinion).

Both the plain meaning of the statute and long-standing judicial interpretation thereof lead to the opposite result.

## II

The Comparative Negligence Act, *L.*1973, *C.* 146, was the Legislature's response to the harshness of the complete bar to recovery imposed by the rule of contributory negligence. See *Suter v. San Angelo Foundry & Machine Co.*, 81 *N.J.* 150, 161 (1979); *id.* at 204–05 (concurring opinion); *O'Brien v. Bethlehem Steel Corp.*, 59 *N.J.* 114, 126 (1971) (Francis, J., concurring); *Automobile Insurance Study Commission, Reparation Reform for New Jersey Motorists*, Recommendation 4 at XIV (Dec. 1971); *Release from the Office of the Governor*, May 24, 1973. New Jersey has a "modified" comparative negligence system, as distinguished from a "pure" system under which "a plaintiff may recover even if his negligence is greater than the negligence of the adverse tortfeasor," with the recovery "diminished

by his degree of contributory negligence." C. Heft & C. Heft, *Comparative Negligence Manual* § 1.50 (1978).

Section 1 of the Act reads as follows:

Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property, if such negligence was not greater than the negligence of *the person* against whom recovery is sought, but any damages sustained shall be diminished by the percentage sustained of negligence attributable to the person recovering. [*N.J.S.A.* 2A:15–5.1 (emphasis added).]

The Legislature's use of the singular "the person" rather than the plural form strongly suggests that a plaintiff's negligence should be compared to the negligence of only one person at a time. Plaintiff would have us reject that sensible construction by resort to *N.J.S.A.* 1:1–2, which provides that "[w]herever, in describing or referring to any person * * * any word imparting the singular number *. * * * is used, the same shall be understood to include and to apply to several persons or parties as well * *." The argument is that "in its use of the phrase 'the person against whom recovery is sought' the Legislature intended to refer to the tortfeasor concept in its collective and adjectival sense * * *." 173 *N.J.Super.* at 284 (dissenting opinion).

Whatever persuasive appeal is inherent in that approach is overcome when section 1 of the Act is read in conjunction with section 3. The latter section reads:

The party so recovering, may recover the full amount of the molded verdict *from any party against whom such recovering party is not barred from recovery.* Any party who is so compelled to pay more than such party's percentage share may seek contribution from the other joint tortfeasors. [*N.J.S.A.* 2A:15–5.3 (emphasis added).]

This statute obviously addresses a multi-defendant situation, as in the case before us. Equally obvious is that it contemplates a fact pattern in which the plaintiff is entitled to recover from at least one defendant, while at the same time there are other negligent defendants from whom he is not entitled to recover— the antithesis of aggregating all the defendants' negligence. No other meaning can reasonably be ascribed to the descriptive phrase "any party against whom such recovering party is not

barred from recovery."[2] And if there are defendants from whom plaintiff is entitled to recover and others from whom recovery is barred, then it is clear that aggregation of defendants' percentages of fault is not contemplated; for if it were, and if a plaintiff were entitled to recover against any negligent defendant, he would be entitled to recover against all under the minority's theory. ·

But that is not what section 3 of the statute says. It distinguishes between or among defendants: those from whom recovery is allowed and those against whom recovery is barred. The most obvious point of distinction between the two classes of defendants is the quantum of their respective negligence vis-a-vis the plaintiff's negligence. So if plaintiff is thirty-five percent negligent, defendant A is forty-five percent at fault and defendant B's negligence amounts to twenty percent, in keeping with section 3 of the Act plaintiff would be permitted to recover from defendant A but not from defendant B. *Cf. Nora v. Livingston Twp.*, 171 *N.J.Super.* 579 (App.Div.1980) (defendant B, whose negligence was less than plaintiff's and less than that of defendant A whose negligence was greater than plaintiff's, not a joint tortfeasor for purposes of Joint Tortfeasors Contribution Law; defendant A required to pay entire judgment less amount representing plaintiff's negligence, and not entitled to contribution from defendant B). *N.J.S.A.* 2A:15–5.3 convincingly disposes of the argument that defendants' negligence should be aggregated for purposes of determining whether plaintiff is entitled to recover.

## III

The dissenting judge below recognized that in construing the act as she did, she was disagreeing with prior holdings of the

---

[2]Although the quoted phrase would include a negligent defendant from whom recovery is barred because of immunity from tort liability, we consider it most unlikely that the Legislature would choose such an oblique, all-encompassing expression to describe only a narrow class of tort-immune defendants.

Appellate Division and Law Division, 173 *N.J.Super.* at 288 (dissenting opinion), referring to *Cartel Capital Corp. v. Fireco of New Jersey*, 161 *N.J.Super.* 301, 310 (App.Div.1978), rev'd on other grounds, 81 *N.J.* 548 (1980); *Nora v. Livingston Twp., supra*; and *Rawson v. Lohsen*, 145 *N.J.Super.* 71, 75–77 (Law Div.1976). She felt free to do so because she found unpersuasive the reasoning of the Wisconsin courts upon which those cases were based, 173 *N.J.Super.* at 288 (dissenting opinion), and further because "the Wisconsin Supreme Court itself has begun seriously to question the soundness" of the individual approach in its interpretation of Wisconsin's similarly-worded comparative negligence act. *Id.*

■ The Comparative Negligence Act was taken nearly verbatim from the Wisconsin comparative negligence statute. A legislative enactment patterned after a statute of another state is ordinarily adopted with the prior constructions placed on it by the highest court of the parent jurisdiction. See 2A *C. Sands, Sutherland Statutory Construction* § 52.02 (4th ed. 1973). See also *Suter v. San Angelo Foundry & Machine Co., supra*, 81 *N.J.* at 161; *Woodward v. Haney*, 564 *P.*2d 844, 845–46 (Wyo.1977). Hence it is significant that at the time New Jersey adopted the Wisconsin "modified" form of comparative negligence, the individual approach rather than the aggregate system was a fixture in Wisconsin law. See *Schwenn v. Loraine Hotel Co.*, 14 *Wis.*2d 601, 111 *N.W.*2d 495, 499–500 (Wis.1961). In cases decided after New Jersey had embraced comparative negligence Wisconsin continued to adhere to the principle that the comparison of negligence in multiple defendant cases must be between the plaintiff and each defendant individually. See *Soczka v. Rechner*, 73 *Wis.*2d 157, 164, 242 *N.W.*2d 910 (Wis.1976); *Mariuzza v. Kenower*, 68 *Wis.*2d 321, 228 *N.W.*2d 702 (1975). Whereas it is true that Wisconsin flirted with the notion of embracing the aggregate approach, see dictum in *May v. Skelley Oil Co.*, 83 *Wis.*2d 30, 264 *N.W.*2d 574 (Wis.1978), the departure was but a momentary aberration, as disclosed by *Reiter v. Dyken*, 95 *Wis.* 2d 461, 290 *N.W.*2d 510 (1980).

> To change from the present rule to one in which a plaintiff would be allowed to recover against a person less negligent than himself would have significant ramifications throughout the tort system of allocating losses as it now exists in this state. Specifically, such a change would raise important questions about the extent of a less negligent defendant's liability and the operation of the rules of joint and several liability, contribution, set-off and release. Indeed, unless accompanying changes are made in these related areas of law, the change requested by plaintiff may very well create far more serious problems that it is intended to resolve. For this reason we think plaintiffs' request would be better addressed to the legislature. [*Id.* at 474, 290 *N.W.*2d at 517 (footnote omitted).]

Demonstrating that it meant what it said, the Wisconsin Supreme Court made the following observation within a month of the *Reiter* decision:

> On a number of occasions this court has considered the question of whether or not it should modify or change our comparative negligence rule of law (requiring individual comparison) and this court has consistently held that the decision of whether to change the comparative negligence rule of law is a legislative matter. [*Wisconsin Nat. Gas Co. v. Ford, Bacon & Davis Constr. Co.*, 96 *Wis.*2d 314, 328, 391 *N.W.*2d 825, 831–32 (Wis.1980).]

It is therefore apparent that Wisconsin has put to rest any question of changing its judicial interpretation of that state's comparative negligence law.

## IV

There are public policy considerations supporting both sides of the issue confronting the Court today. We would have difficulty deciding this case on the basis of notions of fairness or the "workability" of the two approaches. However, the unmistakable preference of the Legislature for the individual approach, as so graphically demonstrated by section 3 of the Act, persuades us that any change of our law in this area should come from the legislative rather than the judicial process.[3]

Affirmed.

---

[3] In fact Senate Bill 1507, introduced on January 9, 1979 and passed by both houses of the Legislature, provided for the aggregate approach. However, the bill was pocket-vetoed by Governor Byrne on February 15, 1980.

HANDLER, J., dissenting.

The Court in this case has ruled that New Jersey's Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1 *et seq.*, prevents a plaintiff injured in an accident from recovering damages from defendants whose combined fault for the accident equaled or exceeded that of the plaintiff. It does so notwithstanding the statute's intent to permit recovery by a plaintiff whose own fault for accidental injury constitutes no more than half of the total fault. The Court apparently feels bound to this result for two reasons—because the language of the statute admits of no other interpretation and because this particular interpretation was reached by the courts of another jurisdiction whose decisions are said to be binding upon us. In my view, these reasons, singly or together, do not justify the inequitable result embodied in the majority's interpretation of the Comparative Negligence Act. I therefore dissent.

The majority's interpretation of the New Jersey Comparative Negligence Act is known as the "individual" approach because it calls for the individual comparison of plaintiff's fault with that of each joint tortfeasor in a multi-defendant case in order to determine the liability of each defendant. The individual approach bars a plaintiff's recovery even though the combined negligence of all defendants contributing to the accident exceeds that of the plaintiff. This may be contrasted with the "aggregate" approach, which enables a plaintiff to recover from joint tortfeasors whose combined negligence exceeds that of the plaintiff even though some defendants individually may have been less at fault than the plaintiff. See generally *Heft & Heft, Comparative Negligence Manual* § 150 (1978); Prosser, "Comparative Negligence," 51 *Mich.L.Rev.* 465, 503–507 (1953).

The majority concludes that the plain language of the New Jersey Comparative Negligence Act dictates the individual approach. The statutory language upon which the majority relies provides that "[c]ontributory negligence shall not bar recovery" in a negligence action if the claimant's contributory "negligence

was not greater than the negligence of *the person* against whom recovery is sought ... " *N.J.S.A.* 2A:15–5.1. Further reference is made to another provision of the Act that states that a successful claimant "may recover the full amount" of the verdict to which he is entitled "from *any party* against whom [he] is not barred from recovery." *N.J.S.A.* 2A:15–5.3.

In reasoning that the emphasized words in these passages dictate the individual approach, the majority has succumbed to a common judicial temptation in the interpretation of statutes. In effect, the Court has already interpreted the statute to require the singular significance of the term "person" and then declares that the "plain language" admits of only one interpretation—the one it has selected. Radin, "Statutory Interpretation," 43 *Harv.L.Rev.* 863, 869 (1930).

The essential judicial task, of course, is to ascertain the statutory meaning intended by the Legislature. Where the plain meaning of a statute is revealed by its language, given its ordinary significance and understanding, that meaning, and no other, must be ascribed to the enactment. *Watt v. Mayor and Council of Borough of Franklin,* 21 *N.J.* 274, 276 (1956). See also *Renz v. Penn Central Corp.,* 87 *N.J.* 437, 440 (1981). What constitutes "plain" language, however, is not always obvious. The meaning of language that is seemingly clear and unequivocal may become doubtful and elusive when considered in a wider context. *Watt, supra,* 21 *N.J.* at 276–277. In my estimation, the statutory language at issue does not simply or plainly reveal the intentions of the Legislature. On this threshold point I find myself in agreement with the perceptive views expressed by Judge Pressler in her dissenting opinion in the Appellate Division that in ascertaining the legislative intent underlying the Comparative Negligence Act, the inquiry must go beyond the terms of the statute itself. 173 *N.J.Super.* 280, 284 (1980) (dissenting opinion).

While the facial or literal terms in question permit the construction chosen by the Court, neither the intrinsic nor contextu-

al meaning of the words of the statute requires this interpretation. The Legislature has provided its own guidelines for the interpretation of statutes, which in this case counsel a different construction from that imposed by the majority. *N.J.S.A.* 1:1–2 defines certain words and phrases for interpretive purposes and specifically states that unless expressly excepted or repugnant to the subject of the enactment, all defined words and phrases used in New Jersey legislation carry the meaning indicated in *N.J.S.A.* 1:1–2. See *Bor. of Glassboro v. Patrolmen's Benev. Ass'n, 178,* 149 *N.J.Super.* 254, 258 (App.Div.1977). That statute explicitly provides that "any word importing the singular number . . . shall be understood to include and apply to several persons or parties as well as to one person or party." Thus, the word "person" as used in the Act does not necessarily or plainly denote "one person."

Moreover, there is not the slightest suggestion that construing the term "person," as it appears in *N.J.S.A.* 2A:15–5.1, to include the plural meaning is "repugnant to the subject of the enactment." *N.J.S.A.* 1:1–2. As Judge Pressler observed, quite fairly, "the person against whom recovery is sought" is a legislative reference "to the tortfeasor concept in its collective and adjectival sense." *Van Horn, supra,* 173 *N.J.Super.* at 284.

The majority's reliance on *N.J.S.A.* 2A:15–5.3 to extract a contextual meaning from the words "the person" or "any person" as denoting the singular usage does not advance its "plain language" thesis. That provision has to do with the allocation of the recovery of a successful plaintiff. It simply states that such a plaintiff may recover the entire or full amount of the verdict from any defendant "against whom [the plaintiff] is not barred from recovery." This class of defendants, of course, encompasses all, and means any of the defendants who are liable to the plaintiff under *N.J.S.A.* 2A:15–5.1.

The majority points out that *N.J.S.A.* 2A:15–5.3 contemplates a multi-defendant situation and recognizes by implication that in a given case some defendants will not be subject to a

plaintiff's recovery. *Ante* at 95–96. The majority reasons that because some defendants may not be subject to a plaintiff's recovery under *N.J.S.A.* 2A:15–5.3, the Legislature must have intended the individual approach, since the aggregate approach would render all "negligent" defendants liable.

The majority then makes a critical assumption—that the class of persons not subject to plaintiff's recovery under *N.J.S.A.* 2A:15–5.3 must include negligent defendants who are "less negligent" than the plaintiff. The reason for this assumption, whispers the majority in a footnote, *ante* at 96, is that the only other kind of defendants who would *not* be liable to a plaintiff would be those who have "immunity from tort liability" —a very small class of persons, we are told. Since the Legislature necessarily intended the recovery allocation provisions of *N.J.S.A.* 2A:15–5.3 to apply to a much larger class than tort-immune defendants, this larger class, the majority contends, must include negligent but "less faulty" defendants.

It is difficult to follow this forensic flight. Wherever else it leads, it clearly demonstrates that the legislative intent to use the individual or the aggregate approach cannot be fairly resolved solely from the language of the enactment. Furthermore, the assumption that the class of nonliable defendants under *N.J.S.A.* 2A:15–5.3 would be inappropriately small without inclusion of "less negligent" tortfeasors is unsupported and unwarranted. The class of persons potentially excluded from liability is sufficiently large that we need not resort to "less negligent" defendants to swell its numbers.[1]

In sum, the aggregate approach does not empty the legislation of reasonable meaning. The majority has, I submit, failed in its

---

[1]Such persons would include those defendants who are not liable to a plaintiff for any number of reasons—because they were not negligent or their negligence did not proximately contribute to the accident, or because they are immune from liability or they have affirmative defenses, or because they have not been served with process or they are not proper parties or are not known or identified.

attempt to rely upon the plain language rule as demonstrating the clear meaning and basic intent of the Comparative Negligence Act. The Court cannot, therefore, avoid a deeper probe for the underlying legislative intent.

The second reason for the Court's conclusion that the New Jersey comparative negligence scheme embraces the individual approach is its belief that determinative weight must be given to the construction placed on the comparative negligence statute of Wisconsin by the courts of that state. It is true that New Jersey's Comparative Negligence Act mirrors Wisconsin's. The majority opinion assumes that in adopting a comparative negligence statute similar to Wisconsin's, our Legislature intended to embrace that state's judicial interpretation of its statute as well.

As a general rule, courts give a legislative enactment patterned after the statute of another state the same construction placed upon it by the highest court of that jurisdiction. See 2A *Sutherland, Statutes and Statutory Construction*, § 52.02 (4th ed. 1973). New Jersey follows this approach. See *Suter v. San Angelo Foundry & Machine Co.*, 81 *N.J.* 150, 160 (1979). This rule, of course, is merely a tool for ascertaining the true intention of the Legislature. The judicial decisions of another state are not conclusive evidence of legislative intent. Thus, where the legislature of one state chooses to adopt as part of its laws the statute of another state, the judiciary of the adopting state may, if appropriate, choose to interpret its statute differently from the judicial interpretations of the source state. If there is some doubt that the adopting legislature fully intended to embrace the particular interpretations or applications by the courts of the source state, the courts of the adopting jurisdiction do not have to give greater weight to the originating state's judicial decisions than their intrinsic persuasiveness demands; and this is especially so where the public policies of the adopting state elicit different concerns and invoke priorities that are important or unique to that jurisdiction. *Autotote Ltd. v. New Jersey Sports Authority*, 171 *N.J.Super.* 480, 489 (App.Div.1979). See *Whitney v. Fox*, 166 *U.S.* 637, 647, 17 *S.Ct.* 713, 716, 41 *L.Ed.*

1145, 1149 (1897); *Iacone v. Cardillo*, 208 *F.*2d 696, 699 (2d Cir. 1953); *State Roads Commission v. Contee Sand & Gravel Company*, 308 *F.Supp.* 650, 652 (D.Md.1970); *Boyd v. Panama Canal Company*, 160 *F.Supp.* 50, 54 (D.Canal Zone 1958); *Industrial Commission v. Harbor Insurance Company*, 104 *Ariz.* 73, 449 *P.* 2d 13 (1968); *Kujich v. Lillie*, 127 *Mont.* 125, 260 *P.*2d 383, 390 (1953); *State v. Nelson*, 58 *S.D.* 562, 237 *N.W.* 766, 768 (1931). See generally *Dickerson, The Interpretation and Application of Statutes* 131–136 (1975).

The assumption that the New Jersey Legislature intended to embrace not only Wisconsin's statute but also its judicial interpretations of that statute is questionable. The majority seemingly takes the view that the New Jersey law does not merely follow but is actually cloned from the Wisconsin statute. While references to the Wisconsin statute are present in the legislative history, there is nothing in that history to indicate that the Legislature, in adopting this statute, considered the central issue presented by this case—whether to employ the aggregate or the individual approach.

In addition, the sponsors' statement accompanying the bill introduced in the Assembly did not refer exclusively to the Wisconsin approach. Rather, it read, in pertinent part: "This State will not be unique if it adopts the law of comparative negligence. Other jurisdictions such as Wisconsin, Arkansas, Georgia, Maine, Florida, Iowa, Mississippi, Nebraska, South Dakota, Puerto Rico, the Canal Zone, the Canadian provinces, etc., have a form of comparative negligence." *Assem. No. 665* (Introduced Feb. 7, 1972). Therefore, it seems clear that the sponsors of the bill considered not only the law of Wisconsin but also that of a variety of jurisdictions, some of which adhere to the aggregate approach.

One such state, specifically mentioned by the sponsors, is Arkansas. Though its comparative negligence statute was couched in terms of singular usage, that state adopted the aggregate approach through judicial construction as early as

1962. *Walton v. Tull*, 234 Ark. 882, 356 *S.W.2d* 20 (Ark.1962). *Accord, Riddell v. Little*, 253 Ark. 686, 488 *S.W.2d* 34 (Ark.1972). The Arkansas Supreme Court held:

> We observe that the basic purpose of [the comparative negligence statute] is to distribute the total damages among those who cause them. Furthermore, the legislature did not mean to go any further than to deny recovery to a plaintiff only when his negligence was at least 50% of the cause of the alleged injury or danger. In other words, if the plaintiff's negligence is less than 50% of all the co-defendants, he is entitled to recover from each or all of them as joint tortfeasors even though the plaintiff's negligence equals or exceeds that of a particular co-defendant. [*Walton, supra*, 356 *S.W.2d* at 36]

In 1978, the Oklahoma Supreme Court held that the state's comparative negligence statute, then phrased in the singular, should be interpreted to apply an aggregate approach. The court reasoned that its statute was based on the statutory scheme of both Wisconsin and Arkansas and that Arkansas' "aggregate" approach was preferable. *Laubach v. Morgan*, 588 *P.2d* 1071, 1073 (Okl.S.Ct.1978).

In opting to follow exactly or literally the Wisconsin judicial interpretation of the Comparative Negligence Act, this Court has abandoned any genuine interpretation of the Act and has walled off its analysis from any considerations of public policy. Yet no compelling argument is made why the decisions of the Wisconsin Supreme Court should be clamped around this State's comparative negligence law like an iron girdle, yielding no breathing room for our own tort law jurisprudence and public policy. In light of a legislative history that does not dictate such a course, our deliberations should be aired fully with reflections of our own public policy and legal traditions.

Considerations of public policy must necessarily recognize the significance of comparative negligence as both a statutory and common law precept. The abolition of the ancient doctrine of contributory negligence as an absolute bar to recovery on behalf of an injured plaintiff is the public policy of this state. *Renz, supra*, 87 *N.J.* at 456. The Comparative Negligence Act eliminates the draconian effect of plaintiff contributory negligence.

The thrust of the remedial law necessarily focuses on the conduct of the plaintiff. It does not concentrate on defendants' actions as a basis for primary liability. Judge Pressler's dissent properly attaches great significance to this statutory attention to plaintiff fault. *Van Horn, supra,* 173 *N.J.Super.* at 285. She soundly observes that because the Act allows recovery by plaintiffs who do not "bear more than equal fault" for their injuries, it could not have been the intention of the Legislature that recovery depend upon the number of defendants joined in a suit.

Thus, no one questions that a plaintiff who is 40% negligent should be able to recover when there is only one 60% negligent defendant. That policy, it follows, should allow recovery for such a plaintiff if, instead of a single negligent defendant, there are three 20% or six 10% negligent defendants. This Court's interpretation of the Act, however, precludes that result. It returns much of the arbitrary harshness of the old contributory negligence doctrine—the liability trap that snared recoveries from injured claimants whose contributory negligence in the totality of the circumstances and in relation to all guilty parties was truly not grave enough to warrant the denial of any relief whatsoever. Regarding legislation designed to alleviate the unmitigated severity of total defeat in personal injury litigation, it appears as unfair to deny all recovery to a 40% negligent plaintiff because harm is inflicted by three 20% negligent defendants as it was to deny recovery to a 1% negligent plaintiff under the contributory negligence doctrine. The anomaly of the Court's construction of the statute is that its application and effect will turn on arithmetic—the simple addition or subtraction of parties. There is a sharp irony in the selection of a statutory interpretation—the individual approach—that causes the remedial reach of the legislation to shrink in inverse proportion to the number of tortfeasors who are added to the lawsuit.

The majority's interpretation allows results that are not only harsh and inequitable to a plaintiff in a multi-defendant case, but also equally arbitrary and unfair to defendants. Under the Joint Tortfeasors Contribution Act, *N.J.S.A.* 2A:53A–1 *et seq.,*

the individual approach permits an individual defendant less negligent than plaintiff to avoid completely all responsibility for the payment of a judgment and to foist upon another defendant the total burden of recovery, even though the latter was not the only defendant at fault. However, if it seems unfair to allow a plaintiff to recover from a less faulty defendant, which is permitted under the aggregate approach, the Joint Tortfeasors Contribution Act would operate to mitigate this apparent wrong. If all defendants are responsible for a plaintiff's recovery, at least all will share the burden among themselves in proportion to their individual fault. *N.J.S.A.* 2A:15–5.3. See *Cartel Capital Corp. v. Fireco of New Jersey*, 81 *N.J.* 548, 569–570 (1980); *Rogers v. Spady*, 147 *N.J.Super.* 274, 277 (App. Div.1977). Hence, the less negligent defendant will be able to seek contribution against the more negligent defendant if he has paid plaintiff in an amount which exceeds his proportionate share of the total fault.

The salutary policy of allocating responsibility among all negligent parties in proportion to their relative fault is more fully achieved as to both plaintiffs and defendants under the aggregate approach. In a sense, the damages award to an injured plaintiff and the contribution award to a joint tortfeasor share a common strain. *Arcell v. Ashland Chemical Co.*, 152 *N.J.Super.* 471, 485 (Law Div. 1977). The damages award compensates the plaintiff for injury caused primarily by others; the contribution award more closely harmonizes the defendant's share of damages with the defendant's degree of fault as among all those who primarily caused the injury. The award to the plaintiff approximates the amount of the loss not caused by plaintiff, *id.*; the contribution award substantially reduces the payment made by a defendant for losses not caused by that defendant, *Prosser, Law of Torts* at 305–310 (4th ed. 1971); Bohlen, "Contribution and Indemnity Between Tortfeasors," 21 *Cornell L.Q.* 552 (1936). Thus, both awards tend to shift the burden of payment in the direction of and in proportion to the

percentage of fault. The impetus toward this result is furthered by the aggregate approach.

Not only does the individual approach have the clear potential for harsh, inequitable and capricious results for the parties in a given case, but it will also generate other negative influences in the tort field. Our jurisdiction is strongly committed to the single controversy doctrine. See, *e.g., Falcone v. Middlesex County Medical Society*, 47 *N.J.* 92, 93–94 (1966). *Ajamian v. Schlanger*, 14 *N.J.* 483, 485 (1954), *cert. den.* 348 *U.S.* 835, 75 *S.Ct.* 58, 99 *L.Ed.* 659 (1954). See also *Tevis v. Tevis*, 79 *N.J.* 422, 434 (1979). This extends not only to joining all related causes but all parties in a single action. *River Edge Savings and Loan Association v. Clubhouse Associates, Inc.*, 178 *N.J.Super.* 177, 182 (App.Div.1981). The fairest resolution of tort claims follows a trial where all allegedly negligent parties are represented in a single action. Prosser, *supra,* 51 *Mich.L.Rev.* at 503–504. If there is a significant ulterior incentive—one unrelated to the merits of a controversy or the legitimate search for truth—to overinclude or underinclude parties, the judicial process can be distorted and the proper administration of justice disserved. The majority's individual approach, however, encourages such judicial skewing because it gives a tactical reward to the litigant who can most successfully manipulate the number of defendants involved in a tort action, *i.e.*, a plaintiff's omission or a defendant's addition of party defendants.[2]

---

[2]Similar distortions involving counterclaims will be generated by the majority's individual approach. The situation can arise in which plaintiff is denied recovery against a particular defendant yet that same defendant can recover on a counterclaim against the plaintiff, whose injuries have gone uncompensated. For example, if there is a 40% negligent plaintiff and one 25% negligent defendant and a second 35% negligent defendant, under the majority's individual approach, the plaintiff cannot recover anything from either defendant. However, if either defendant files a counterclaim against the plaintiff, he can recover from the plaintiff. Thus, defendants would get a windfall of sorts—a recovery from plaintiff for his own injuries (reduced, of course, by the percentage of defendant's contributory negligence) and the

The primary roadblock to adopting the aggregate approach stems perhaps from a fear of eroding the New Jersey Comparative Negligence Act into one of "pure" comparative negligence where a plaintiff is permitted recovery even when his negligence exceeds one-half of the total fault of all parties causing the accident. See generally Fleming, "Comparative Negligence at Last—By Judicial Choice," 64 *Cal.L.Rev.* 239 (1976). If, under the aggregate approach, the New Jersey Act permits a 40% negligent plaintiff to recover from each of three 20% individually negligent defendants, the plaintiff is obviously receiving damages from parties individually less negligent than himself. This, however, does not transmute the scheme into a "pure" comparative negligence system. Each defendant is paying only 20% of the total molded verdict, and the plaintiff's fault does not actually exceed the total fault of all other defendants, as it could in a "pure" comparative negligence jurisdiction.[3]

It might be thought that the individual approach has become a settled part of our comparative negligence law. However, this Court has never before considered whether our Comparative Negligence Act incorporates either the individual or the aggregate approach. The first reported judicial construction of this aspect of the Act occurred only five years ago in *Rawson v. Lohsen*, 145 *N.J.Super.* 71 (Law Div. 1976). That trial court

---

assurance that he would not have to compensate plaintiff for any of plaintiff's injuries.

[3]The Joint Tortfeasors Contribution Act historically mandated a "pure" form of contribution in its typical application. *Theobald v. Angelo*, 44 *N.J.* 228 (1965). When a 40% negligent tortfeasor collected a pro rata contribution from a 20% negligent joint tortfeasor, the primary tortfeasor in fact received contribution from a party less negligent than itself. To the extent a less negligent tortfeasor may be subject to a plaintiff's recovery, however, the aggregate approach would serve to mitigate any perceived injustice because proportionate contribution is now a feature of the Comparative Negligence Act. *Cartel Capital Corp. v. Fireco of New Jersey*, 81 *N.J.* 548, 569 (1980). See Sowle & Conkle, "Comparative Negligence Versus the Constitutional Guarantee of Equal Protection: A Hypothetical Judicial Decision," 1979 *Duke L.J.* 1083.

decision adopting the individual approach has been followed in only two, very recent Appellate Division cases, which failed to address the aggregate-individual conflict squarely. *Cartel Capital Corp. v. Fireco of New Jersey,* 161 *N.J.Super.* 301, 310 (1978), rev'd on other grounds, 81 *N.J.* 548 (1980); *Nora v. Livingston Tp.,* 171 *N.J.Super.* 579 (1980). The existence of these decisions cannot be accepted as the settled law in this State without a conscientious and scrupulous assessment by this Court of their inherent soundness. See *Renz, supra,* 87 *N.J.* 437. On this point, I share the view of the dissenting judge of the Appellate Division below that these lower court decisions are not founded upon a careful evaluation of public policy. Rather, they opted to follow the Wisconsin courts' interpretation of the Wisconsin statute as a matter of statutory construction, 173 *N.J.Super.* at 88, a route that was not mandated and that I would reject.[4]

It is arguable that because the Legislature has not acted to amend the Act, the legislative intent is being accurately executed by the courts. That inaction, however, may indicate acquiescence, or it may indicate merely that the Legislature did not act. *Romeo v. Romeo,* 84 *N.J.* 289, 294 (1980); *State v. Sands,* 76 *N.J.* 127, 137 n.1 (1978). In the present case, legislative inaction spans a relatively short period of time and the

---

[4]Recently the Wisconsin Supreme Court, without expressly changing its position, voiced dissatisfaction with the individual approach in *May v. Skelley Oil Co.,* 83 *Wis.*2d 30, 264 *N.W.*2d 574, 578 (S.Ct.1978), *viz*:

> The majority of the court has become convinced that comparing the negligence of the individual plaintiff to that of each individual tortfeasor—rather than comparing the negligence of the individual plaintiff to that of the combined negligence of the several tortfeasors who have collectively contributed to plaintiff's injuries—leads to harsh and unfair results . . .

While it there observed that the comparative negligence doctrine could be changed by judicial decision, it stated in *Reiter v. Dyken,* 95 *Wis.*2d 461, 290 *N.W.*2d 510, 515 (S.Ct.1980), with an almost apologetic tone, that the request to change its present rule "would be better addressed to the legislature."

reported cases consist of just three lower court decisions. Prior case law and lack of corrective action by the Legislature in this context should thus be given minimal weight, especially where this Court is faced with "overriding considerations [demanding recognition] that the purpose of our legal system is to serve justly the needs of present day society." *Arrow Builders Supply Corp. v. Hudson Terrace Apts., Inc.*, 15 *N.J.* 418, 426 (1954).

In sum, I find no forceful argument in favor of construing the Comparative Negligence Act, as has the majority, to require the comparison of the negligence of a plaintiff with those of defendants on an individual basis. The language of the Act itself does not demand this. The decisions of the Wisconsin Courts do not constitute persuasive evidence of the intent of the New Jersey Legislature on this facet of the Act. Those decisions betray serious misgivings as to the soundness and wisdom of the interpretation of that state's law and are entitled to neither dispositive nor great weight by us in interpreting our law. Most importantly, our own public policy considerations strongly impel the aggregate approach to our Comparative Negligence Act.

Accordingly, I dissent.

Justices SULLIVAN and PASHMAN join in this opinion.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER and POLLOCK—4.

*For reversal*—Justices SULLIVAN, PASHMAN and HANDLER—3.