253 N.J. Super. 475 (1992)
602 A.2d 287
ROBERT MARK BONPUA, PLAINTIFF-RESPONDENT,
v.
SALVATORE FAGAN, DEFENDANT-COUNTERCLAIMANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 19, 1991.
Decided February 4, 1992.
*476 Before Judges PRESSLER, SHEBELL and SKILLMAN.
Joseph Meehan, attorney for appellant.
Kalac, Newman, Lavender & Campbell, attorneys for respondent (Dennis Lavender, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
*477 This lawsuit arises out of a physical altercation between plaintiff and defendant in the parking lot behind Cammarano's Bar in Long Branch on March 26, 1987. Plaintiff's complaint and defendant's counterclaim each allege that they suffered personal injuries as a result of an assault and battery or, in the alternative, negligence of the other party. Each party's answer alleges that the other party's claim is barred or subject to reduction due to that party's contributory fault.
Defendant was convicted of aggravated assault, in violation of N.J.S.A. 2C:12-1(b)(1), and sentenced to a seven year term of imprisonment, for his role in the altercation. We affirmed defendant's conviction and sentence in an unreported opinion. State v. Fagan, No. A-2973-87T7 (February 7, 1989).
Plaintiff moved for summary judgment on liability and the dismissal of defendant's counterclaim on the theory that defendant's conviction for aggravated assault conclusively established that he committed an intentional tort upon plaintiff, and that under the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 to -5.8, any negligence or other fault of plaintiff would not bar or reduce his claim.
The trial court granted plaintiff's motion in part, striking defendant's affirmative defense of comparative negligence and entering summary judgment on liability in favor of plaintiff, but refused to dismiss defendant's counterclaim. We granted defendant's motion for leave to appeal from the summary judgment on liability in favor of plaintiff and now reverse.[1]
Subsequent to the trial court's decision, the Supreme Court held in Blazovic v. Andrich, 124 N.J. 90, 590 A.2d 222 (1991), that the Comparative Negligence Act applies to intentional tortious conduct. Thus, the Act requires the trier of fact *478 to apportion the fault of all culpable parties, regardless of whether their conduct was negligent or intentional. The Court stated:
Refusal to compare the negligence of a plaintiff whose percentage of fault is no more than fifty percent with the fault of intentional tortfeasors is difficult to justify under a comparative-fault system in which that plaintiff's recovery can be only diminished, not barred....
Moreover, we reject the concept that intentional conduct is "different in kind" from both negligence and wanton and willful conduct, and consequently cannot be compared with them. Instead, we view intentional wrongdoing as "different in degree" from either negligence or wanton and willful conduct. To act intentionally involves knowingly or purposefully engaging in conduct "substantially certain" to result in injury to another. In contrast, wanton and willful conduct poses a highly unreasonable risk of harm likely to result in injury. Neither that difference nor the divergence between intentional conduct and negligence precludes comparison by a jury. The different levels of culpability inherent in each type of conduct will merely be reflected in the jury's apportionment of fault. By viewing the various types of tortious conduct in that way, we adhere most closely to the guiding principle of comparative fault  to distribute the loss in proportion to the respective faults of the parties causing that loss. Thus, consistent with the evolution of comparative negligence and joint-tortfeasor liability in this state, we hold that responsibility for a plaintiff's claimed injury is to be apportioned according to each party's relative degree of fault, including the fault attributable to an intentional tortfeasor. [124 N.J. at 106-07, 590 A.2d 222; citations omitted].
Plaintiff urges that the Comparative Negligence Act is inapplicable because defendant's intentional wrongdoing resulted in defendant's conviction of a criminal offense. However, we find nothing in Blazovic which suggests this limitation upon the application of the Act. Furthermore, whether a tortfeasor's conduct results in a criminal conviction is not an accurate barometer of the egregiousness of that conduct. Prosecuting authorities may decline to prosecute or be unable to obtain a conviction for serious wrongdoing while relatively minor misconduct may result in a conviction for a petty offense. We also note that conduct which is treated as negligence under the law of torts may result in a criminal conviction; for example, reckless driving which causes a death may result in a conviction for death by auto. N.J.S.A. 2C:11-5. Yet, a party convicted of death by auto would not be precluded in an automobile negligence case from urging that his liability should be reduced due *479 to the decedent's contributory fault or shared with other culpable parties. The rationale of Blazovic does not provide any basis for concluding that a defendant alleged to have committed an intentional tort which has resulted in a criminal conviction should be barred from relying upon the Comparative Negligence Act when an alleged negligent defendant would not be barred under the same circumstances.
Even if we assume that some intentional wrongdoing may be so offensive that the tortfeasor should not be allowed to assert the plaintiff's contributory fault, cf. Jake Dear & Steven E. Zipperstein, Comparative Fault and Intentional Torts: Doctrinal Barriers and Policy Considerations, 24 Santa Clara L.Rev. 1, 18-20 (1984), this determination should turn on the nature of the parties' conduct rather than the circumstance that the defendant has been convicted of a criminal offense. Therefore, defendant's criminal conviction does not preclude him from relying upon the Comparative Negligence Act as a defense to plaintiff's claim.
We are also satisfied that defendant's version of his altercation with plaintiff would support a jury finding that plaintiff was negligent or even guilty of intentional wrongdoing. Defendant testified that as he was talking to his girlfriend, plaintiff ridiculed him and called him a "faggot." Defendant then walked over to plaintiff's car, at which time plaintiff got out of the car and began hitting defendant. According to defendant, plaintiff's injuries resulted entirely from defendant's efforts to defend himself. If a jury believed even part of defendant's version of this incident, it could find that plaintiff committed an assault upon defendant or at least failed to exercise due care for his own safety.
Furthermore, such a finding would not be inconsistent with the criminal jury's finding that defendant was guilty of second degree aggravated assault. The criminal jury could have returned a guilty verdict even though it believed plaintiff initiated the altercation if it found that defendant responded to plaintiff's *480 verbal abuse by assaulting him or used excessive force in repelling his aggression. See N.J.S.A. 2C:3-4; State v. Abbott, 36 N.J. 63, 67-75, 174 A.2d 881 (1961).
Accordingly, we reverse the summary judgment in favor of plaintiff and remand for further proceedings consistent with this opinion.
NOTES
[1] Since plaintiff did not move for leave to appeal from the denial of the part of his motion seeking dismissal of defendant's counterclaim, that denial is not before us.