290 N.J. Super. 698 (1995)
676 A.2d 622
CYNTHIA QUENET, ADMINISTRATRIX PROSEQUENDUM AND ADMINISTRATRIX OF THE ESTATE OF WILLIAM R. KING, DECEASED, PLAINTIFF,
v.
CAROL REVOLINSKY, CONDORP, INC., BRUCE A. THOMPSON, ESTIMATE AND DESIGN SERVICES, LTD., DEFENDANTS. THEODORE G. SOURLIS AND ELAINE SOURLIS, THIRD PARTY PLAINTIFFS,
v.
ESTIMATE AND DESIGN SERVICES, LTD., A BODY CORPORATE, THIRD PARTY DEFENDANTS. OTTO HARLING, EXECUTOR OF THE ESTATE OF HILDEGARD HARLING BUSTARD, DECEASED, PLAINTIFFS,
v.
CAROL REVOLINSKY; CONDORP, INC.; BRUCE A. THOMPSON; THEODORE G. AND ELAINE SOURLIS; ESTIMATE AND DESIGN SERVICE, LTD.,; AND CYNTHIA QUENET, ADMINISTRATRIX OF THE ESTATE OF WILLIAM R. KING, DECEASED, DEFENDANTS. THEODORE G. SOURLIS AND ELAINE SOURLIS, DEFENDANTS/THIRD PARTY PLAINTIFFS,
v.
CYNTHIA QUENET, ETC.; ET ALS.
Superior Court of New Jersey, Law Division Monmouth County.
Decided August 7, 1995.
*700 Terence G. Van Dzura, for plaintiff Harling.
Arnold S. Cohen, for plaintiff/defendant Quenet (Klehr, Harrison, Harvey, Branzberg & Ellers, attorneys).
*701 Carol Revolinsky, Pro Se defendant.
Philip G. Pagano, for third party plaintiffs/defendants Sourlis (Magee, Pagano & Isherwood, attorneys).
Stephen G. Sweet, for defendant/third party defendant Estimate and Design Service, Ltd. & Cirigliano (Methfessel & Werbel, attorneys).
Barry Strosnider, for defendant Condorp, Inc. (Slimm & Goldberg, attorneys).
Bruce A. Thompson, no one appearing.
O'HAGAN, J.S.C.
This controversy involves post-trial disputes which require interpretation of N.J.S.A. 2A:15-5.3, pertaining to entitlement to economic damages and the determination of whether defendants might properly seek contribution from plaintiff on account of their settlement with a co-plaintiff. The court notes the argument that one of the defendants, a corporation, is responsible for the independent contractual positions taken by its now impecunious shareholder on the stated grounds the corporation is the alter ego of the shareholder.
The essential facts underlying this dispute are stated as follows:
William King and Hildegard Bustard were tragically killed in a fire occurring at premises situated in Red Bank, New Jersey. Representatives of the decedents brought suit against Condorp, a New Jersey corporation, Carol Revolinsky, Bruce Thompson (Thompson), Elaine Sourlis, Theodore Sourlis, and Estimate Design Services, a New Jersey corporation, (EDS). Following the summations, immediately prior to the court's charge, defendants settled with representatives of the estate of Bustard, apparently for $150,000. At the close of plaintiff's case, Theodore Sourlis was dismissed from the case upon motion, and ultimately the jury determined Elaine Sourlis was not negligent in any fashion. The jury found that EDS bore 55% of the responsibility for the occurrence of the fire as a result of their substandard electrical *702 work performed some years earlier at a time when the Sourlis defendants owned the premises in question. Thompson was determined to be the owner of the unit and was found to be 17.5% responsible for the extent of the damage and injuries as a result of deficiencies involving the smoke detector in this residential condominium unit. Condorp was determined to be the owner of the unit and similarly was found to be 17.5% responsible for the same underlying reason. Finally, the late William King was found to be 10% responsible for the damage and injuries resulting from the fire as he had caused a smoke detector to be inoperable.
To state the jury verdict more directly, it was determined that plaintiff and certain defendants were negligent, which negligence was a proximate cause of the fire and/or the consequences of the fire. In response to a special written interrogatory, the jury went on to allocate or apportion responsibility. Finally, the jury awarded plaintiff, Cynthia Quenet, as representative of the estate of King, $200,000 for the pain and suffering he sustained, along with $200,000 for the financial loss suffered by Cynthia Quenet and other family members. In addition, the jury awarded full reimbursement of funeral and burial expenses.
Given the timing of the settlement with the Bustard plaintiffs, the verdict sheet, already prepared, was presented to the jury, including the claim of the representative of the Bustard estate.

POINT I
Cynthia Quenet argues that, notwithstanding King's negligence, the estate's recovery for economic damages may not be reduced contending that the 1987 amendment to N.J.S.A. 2A:15-5.3 precludes such reduction. N.J.S.A. 2A:15-5.3b provides: the party so recovering may recover as follows: ....
b. the full amount of economic damages plus the percentage of non-economic damages directly attributable to that party's negligence from any party determined by the trier of the fact to be more than 20% but less than 60% responsible for the total damages.
[N.J.S.A. 2A:15-5.3b]
*703 Plaintiff maintains, therefore, that while the recovery for pain and suffering, i.e. non-economic loss, may be reduced by 10%, matching the jury's determination of King's negligence, the Legislature clearly intended that plaintiff recover the full amount of the economic loss.
Calling upon well accepted principles, plaintiff contends that the court's role is to enforce a statute as written. N.J. Shore Builders Association v. Township of Marlboro, 248 N.J. Super. 508, 591 A.2d 950 (App.Div. 1991). Further, the court is not to rewrite a statute so as to impose its own sense of fairness and equity. State Board of Medical Examiners v. Warren Hospital, 102 N.J. Super. 407, 246 A.2d 78, aff'd, 104 N.J. Super. 409, 250 A.2d 158 (App.Div. 1969). Plaintiff argues a statute which is clear and unambiguous on its face must be enforced in such a manner as to carry out the legislative will. Millan v. Morris View, 177 N.J. Super. 620, 427 A.2d 605 (App.Div. 1981).
Surely, the principles advanced by plaintiff are sound and not in any way challenged here by the court. However, plaintiff's recovery of economic damages must be reduced by 10% to coincide with King's percentage of negligence, found by the jury.
It is important, first, to recognize that N.J.S.A. 2A:15-5.3 constitutes the latest refinement of New Jersey's comparative negligence statutes, N.J.S.A. 2A:15-5.1  5.3. Further, N.J.S.A. 2A:15-5.2 and 2A:15-5.3 were sections 1 and 2 respectively of Chapter 325 of the laws of 1987, adopted on the same day and to be effective on the same day.
Therefore, without question, N.J.S.A. 2A:15-5.3b must be read as only one part of the legislation dealing with issues concerning comparative negligence. Blazovic v. Andrich, 124 N.J. 90, 590 A.2d 222 (1991). That is, the court must look at the statutory scheme as a whole in order to properly interpret one part. Matter of Boyan, 246 N.J. Super. 300, 587 A.2d 640 (App. Div. 1991), certif. granted, 126 N.J. 342, 598 A.2d 898, (1991) rev'd, 127 N.J. 266, 604 A.2d 98 (1992). Isolated sections of an integrated *704 statute must be considered in the context of the Legislature's clearly stated purpose. American Cyanamid Co. v. State, Dept. of Environmental Protection 231 N.J. Super. 292, 555 A.2d 684, (App.Div. 1987), certif. denied, 117 N.J. 89, 563 A.2d 847 (1989).
A statute should be construed "to effectuate the probable purpose for which it was enacted." Tozzo v. Universal Underwriters, 261 N.J. Super. 586, 589, 619 A.2d 639 (App.Div. 1993). If a literal reading of a statutory provision is at variance with the clearly identified purpose or intent of the statute, the spirit of the law controls. N.J. Turnpike Employees v. N.J. Turnpike Auth., 200 N.J. Super. 48, 490 A.2d 338 (App.Div. 1985).
In that connection, N.J.S.A. 2A:15-5.2 directs the factfinder to allocate or apportion negligence or responsibility for the happening of an accident among those parties, inclusive of the plaintiff, responsible for its occurrence. The trial judge is instructed to thereafter mold the verdict, applying the percentages of negligence found by the jury against the monetary verdict returned by them. Significantly, that money verdict is inclusive of both economic and non-economic loss.
Prior to the amendment of N.J.S.A. 2A:15-5.3, the injured party could then collect the full amount of the molded award from any defendant found responsible unless the plaintiff was legally barred from recovery against that person. That defendant, having responded in damages, could, thereafter, seek recovery from other tort feasor(s). Thus, a defendant found to be only somewhat responsible for the happening of the accident might bear the entire amount of the verdict in the event he was the only tort feasor having financial resources. On occasion, clearly, such a situation might lead to unfair results. For that reason the Legislature adopted the three-tier approach set forth in parts a., b. and c. of N.J.S.A. 2A:15-5.3. Thus, part a. provides a tort feasor found to be 60% or more responsible for the happening of an accident will be held responsible for the full amount of the damages inclusive of economic and non-economic loss. The full amount of damages, bearing in mind L. 1987, c. 325 § 1, N.J.S.A. *705 2A:15-5.2, is the verdict molded by the court. That is, the claimant's recovery must be reduced by his share of the responsibility for the happening of the accident. In the context of our case, pursuant to part b., since EDS was found to be 55% responsible for the happening of the accident, plaintiff might look to EDS for the full amount of the economic loss. That is to say, the entire molded verdict as to economic loss, determined by the trial court pursuant to N.J.S.A. 2A:15-5.2.
This interpretation of the statute is in keeping with the statement of the Senate Judiciary Committee which is set forth following N.J.S.A. 2A:15-5.2. It is significant that the Judiciary Committee, reporting favorably on the statute, consistently made reference to the award of damages by the fact finder. If plaintiff's position were adopted, the jury's award finding King partially at fault for the damages would necessarily have to be set aside and be declared of no moment. There is no question but there was a purpose underlying the Legislature's requirement that the factfinder allocate or apportion negligence between the parties responsible. Bonpua v. Fagan, 253 N.J. Super. 475, 602 A.2d 287 (App. Div. 1992). Clearly, the jury never intended plaintiff to recover 100% of the economic damages. A common sense reading of the statute in its proper context compels the conclusion that the Legislature intended a claimant's recovery be reduced proportionately to his determined percentage of fault. Bencivenga v. JJAMM, 258 N.J. Super. 399, 609 A.2d 1299 (App.Div. 1992), certif. denied, 130 N.J. 598, 617 A.2d 1220 (1992). The court must give effect to the Legislature's purpose underlying the allocation of damages. Henry v. Shopper's World, 200 N.J. Super. 14, 490 A.2d 320 (App.Div. 1985).
Plaintiff's position concerning entitlement to the full amount of economic damages, if adopted, would constitute a complete reversal of principles firmly established in New Jersey's laws pertaining to negligence.
In this connection, one must consider the changes that have evolved over the past twenty some odd years concerning concepts *706 of contributory comparative negligence. It must be remembered that the comparative negligence statute constituted the Legislature's answer to the sometimes harsh consequence of the doctrine of contributory negligence. Arcell v. Ashland Chemical Co., 152 N.J. Super. 471, 484, 378 A.2d 53 (Law 1977). That is, under prior law, an injured party was completely barred from recovery if he was in any way responsible for the happening of the accident. VanHorn v. William Blanchard Co., 88 N.J. 91, 438 A.2d 552 (1981). Thus, a plaintiff's negligence, however small, barred recovery even in circumstances involving significant injury. Now, pursuant to the comparative negligence statute, a claimant may still recover even if found negligent, provided he does not bear more than 50% responsibility for the happening of the accident. However, his recovery is to be reduced proportionately to his negligence. Bencivenga v. JJAMM, supra, 258 N.J. Super. at 399, 609 A.2d 1299.
Plaintiff seeks to interpret the statute in such a way that King's negligence, far from barring recovery, would not even be considered on the issue of entitlement to economic loss. There is no reason to conclude that the Legislature intended to embark on this entirely new course completely divorced from the evolution of our negligence laws. Keller v. Frank Kull, Inc., 165 N.J. Super. 258, 398 A.2d 106 (App.Div. 1978). To the contrary, if the Legislature sought to depart so drastically from prior law, it would have clearly and without ambiguity stated its intention. Matter of Recycling & Salvage Corp., 246 N.J. Super. 79, 586 A.2d 1300 (App.Div. 1991). The court concludes that the determination of fault or responsibility remains a basic tenet of our negligence law and, therefore, plaintiff's recovery of economic damages must be reduced by 10%.

POINT II
As earlier noted, immediately prior to the court's charge, but after all of the summations had been given, defendants EDS, Condorp, and apparently Elaine Sourlis settled with representatives *707 of Hildegard Bustard. Given the timing at the conclusion of this lengthy trial, and at the request of defendants to avoid prejudice, the verdict sheet, over the objection of plaintiff, was presented to the jury. In this context the jury determined the Bustard plaintiffs should be compensated. Defendants who had made crossclaims for contribution against the King estate contend plaintiff must bear 10% of the settlement amount.
Defendants' claim is pursuant to N.J.S.A. 2A:53A-3, which, in its pertinent parts, provides:
where ... injury ... is suffered by any person as a result of the wrongful act, neglect ... of joint tort feasors, and the person so suffering injury . .. recovers a money judgment ... for such injury . .. against one or more of the joint tort feasors, either in one action or in separate actions, and any one of the joint tort feasors pay such judgment in whole or in part, he shall be entitled to recover contribution from the other ... joint tort feasors for the excess paid over his pro rata share; ....
[N.J.S.A. 2A:53A-3]
The Supreme Court has ruled that a suit may be lawfully maintained by a settling defendant against other parties responsible for the injury as long as the settlement has been elevated to the status of a judgment, by formal court proceedings, and so long as the settlement has discharged the injured party's claim against the non-settling tort feasor. Young v. Steinberg and Cosmo Book Distributing Co., 53 N.J. 252, 255, 250 A.2d 13 (1969). The settlement with Bustard has not been, nor could it now be, elevated to judgment.
Certainly defendants are not maintaining that the jury's verdict under the circumstances here presented constitutes a judgment. The jury was allowed to render its verdict as to the Bustard estate, in part, because of concern on the part of defendants, given the timing of the settlement, that the absence of questions pertaining to the Bustard estate would significantly prejudice defendant's case against plaintiff. Defendants have no legal right in this posture to proceed against plaintiff to compel payment of a portion of the settlement monies to the Bustard plaintiffs.

*708 POINT III

Finally, plaintiff and EDS argue Condorp was the alter ego of Thompson and, therefore, plaintiff might recover 35% of the jury's award from either Condorp or Thompson. Plaintiff and EDS argue by analogy to concepts of piercing the corporate veil contending that Condorp and Thompson acted as one and, therefore, plaintiff might recover from Condorp the full amount of the award attributed to the owner of the condominium unit. There are no facts which support such argument. The case was never presented to the jury on the theory now advanced by plaintiff and EDS. Rather, the jury was asked to determine the owner of the condominium unit in question, but it was never asked to decide if Condorp and Thompson acted as one. Given the statutory and regulatory language, the jury's verdict is legally supportable and not inconsistent. Finally, the jury was not put to the task of deciding if Thompson was the alter ego, so to speak, of Condorp.
For these reasons the court concludes Condorp is responsible for 17.5% of the jury's award and Thompson responsible for another 17.5% of the award.