**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3510-18
               A-3524-18

LIBERTY INSURANCE CORP.
and LM INSURANCE GROUP,

    Plaintiffs-Respondents,

v.

TECHDAN, LLC, EXTERIOR
ERECTING SERVICES, INC.,
DANIEL FISHER, ROBERT
DUNLAP, and CAROL JUNZ,

    Defendants-Appellants.

_____

Argued March 3, 2021 – Decided July 21, 2021

Before Judges Alvarez, Sumners, and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-1664-12.

Justin T. Loughry argued the cause for appellant Carol Junz (Loughry and Lindsay, LLC, attorneys; Justin T. Loughry, on the briefs).

John P. Morris argued the cause for appellants Techdan, LLC, Exterior Erecting Services, Inc., Daniel Fisher, and Robert Dunlap.

Anthony J. Golowski, II, argued the cause for respondents (Goldberg Segalla, LLP, attorneys; Anthony J. Golowski, II, and H. Lockwood Miller, III, on the brief).

PER CURIAM

This insurance fraud complaint was filed by plaintiffs Liberty Insurance Corp. and LM Insurance Corp., under the New Jersey Insurance Fraud Prevention Act (IFPA), N.J.S.A. 17:33A-1 to -30. A jury awarded plaintiffs $756,990 in compensatory damages against defendants Techdan LLC and Exterior Erecting Services, Inc., and punitive damages against defendant Robert Dunlap in the amount of $200,000, against defendant Carol Junz in the amount of $45,000, and against defendant Daniel Fisher[1] in the amount of $10,000. After dismissing the jury, the judge held all defendants jointly and severally liable for 100% of the compensatory damages, trebling the sum as to Techdan, Exterior, Dunlap, and Junz, as called for by IFPA, thus increasing the award to $2,270,970. The judge also vacated the punitive damages award against Dunlap, Fisher, and Junz, but assessed $756,990 against Fisher,

---

[1] We refer to Techdan, Exterior, Dunlap, and Fisher as the Techdan defendants.

because, although the jury did not find Fisher liable for IFPA violations, he was held jointly and severally liable on other counts. Pursuant to the statute, the judge also trebled attorneys' fees against all defendants but Fisher, for a total of $2,768,018.01. Defendants appeal, and we consolidate the matters for decision. We now vacate the judgment, remanding for a new trial.

I.

On September 26, 2012, Dunlap, on Techdan's behalf, entered a guilty plea to second-degree theft by deception, N.J.S.A. 2C:20-4, with the Office of the Insurance Fraud Prosecutor (OIFP). Techdan had also been indicted on a charge of fourth-degree workers' compensation fraud, N.J.S.A. 34:15-57.4. The charges arose from the company's under-reporting of employee wages in order to obtain lower workers' compensation insurance premiums. The plea agreement called for Techdan and Dunlap to pay restitution to plaintiffs totaling $75,000.

Plaintiffs' nine-count civil complaint alleged workers' compensation premium fraud, N.J.S.A. 34:15-57.4 (count one); violations of IFPA (count two); common-law fraud (count three); breach of contract against Techdan and Exterior related to the calculation of insurance premiums (count four); quantum meruit claims against Techdan and Exterior (count five); civil aiding

and abetting against Fisher, Dunlap, and Junz[2] (count six); that Techdan's limited liability veil should be pierced, as should the corporate veil of Exterior (count seven); that company officers and directors should be held personally liable (count eight); and charging civil conspiracy against Fisher and Dunlap (count nine). The parties engaged in extensive motion practice—we describe only those applications that are relevant to our decision.

On July 7, 2017, the court partially granted plaintiffs' motions for summary judgment. The judge found the Techdan defendants made false statements to obtain workers' compensation insurance at more favorable rates, were liable for compensatory damages for their violation of IFPA, and were jointly and severally liable for premiums for workers' compensation insurance (in a minimum of at least $75,000). The judge also found Techdan and Exterior jointly and severally liable for breach of contract in the amount of $75,000.

Pre-trial, the judge reserved for the jury's determination whether plaintiffs had proven a pattern of fraud under IFPA, and whether compensatory damages, if liable, should be assessed, reserving to the court calculation of

---

[2] Junz was added to this count by plaintiff's amended complaint filed February 28, 2017.

counsel fees. The judge also said the jury would be advised of the ultimate outcome of their decision, such as trebling of damages and an award of counsel fees. However, no ultimate outcome charge was given.

Prior to instructing the jury, the court conducted a charge conference. All parties submitted proposed charges.

The jury rendered its verdict on December 20, 2018, after ten days of trial during which Junz, Dunlap, and Fisher testified on their own behalf. The jury found plaintiffs established workers' compensation fraud, insurance fraud, and a pattern of insurance fraud under IFPA against Techdan, Exterior, Dunlap, and Junz (but not Fisher); common-law fraud against all defendants; aiding and abetting against Dunlap, Fisher, and Junz; and civil conspiracy against Dunlap and Junz (but not Fisher). The jury further found plaintiffs established a basis for piercing the corporate veil and imposing director's liability against Dunlap (but not Fisher).

The jury also found Techdan and Exterior liable for damages in excess of $75,000, and awarded additional compensatory damages payable by Techdan in the amount of $454,660, and against Exterior in the amount of $227,330, but none against Dunlap, Fisher, or Junz. The jury awarded punitive

damages of $200,000 against Dunlap, $10,000 against Fisher, and $45,000 against Junz.

After the jury's verdict, and after entertaining oral argument from counsel regarding the form of final judgment, on February 1, 2019, the court held that all five defendants were jointly and severally liable for 100% of the $756,990 in compensatory damages. The judge premised his reasoning on the jury's finding that all five defendants were liable for common-law fraud. Acknowledging that the decision would cause the individual defendants to be responsible for the compensatory damages awarded against Techdan and Exterior, and partially against Dunlap under the consent order, the judge nonetheless considered joint and several liability for the full amount appropriate because the jury's verdicts against all five defendants signified a scheme to defraud plaintiffs. Further, the court justified imposing the full compensatory amount against defendants because under IFPA, Dunlap and Junz were jointly and severally liable with Techdan and Exterior for compensatory damages. The liability finding that Techdan, Exterior, Dunlap, and Junz committed workers' compensation fraud, insurance fraud, and engaged in a pattern of insurance fraud, established that they were each responsible, jointly and severally, for 100% of the compensatory damages;

6

Dunlap and Junz were personally liable for the full amount of the compensatory damages due to their civil conspiracy liability; and Dunlap was personally liable for the full amount of the compensatory damages based on director liability and the jury's decision to pierce the corporate veil.

While Dunlap, Fisher, and Junz were each liable for the full amount of compensatory damages because the jury held them liable for aiding and abetting, the court declined to impose IFPA liability upon Fisher in deference to the jury's conclusions he neither violated the statute nor engaged in a pattern of insurance fraud. The court further relied upon the language of the jury instructions to justify joint and several liability among the three individual defendants and two business defendants for compensatory damages. Finally, plaintiffs alleged the substance of the counts required joint and several liability among defendants.

Defendants moved for reconsideration pursuant to Rule 4:49-2 or, alternatively, a new trial pursuant to Rule 4:49-1. The Techdan defendants did not take issue with the jury's verdict or their factual findings, rather, they claimed the court substituted its own view of the evidence for that of the jury, deviating from the jury's intent when rendering final judgment. They argued the jury was unaware of the ramifications of joint and several liability, and that

7

since the jury awarded zero compensatory damages against the individual defendants, the court's entry of final judgment deviated from that intent by holding all defendants jointly and severally liable for the verdict. Additionally, Junz argued that the jury did not intend to impose upon her any portion of the $756,990 compensatory damage award, rather, that it was awarded against Techdan and Exterior only.

The court opined that the ultimate outcome charge, which would have informed the jury more specifically of the consequences of their decision, is required when a jury apportions fault between a plaintiff and one or more tortfeasors, reasoning that defendants' reliance on Blazovic v. Andrich, 124 N.J. 90, 92-93 (1991), was mistaken because that case involved apportionment of fault among "a plaintiff, a negligent co-defendant, and several settling co-defendants." Here, plaintiffs were not at fault; they were victims of defendants' illegal and tortious conduct. The judge reminded counsel that he was not requested to provide an ultimate outcome charge. He denied the motions.

## II.

Techdan and Exterior are subcontractors who install exterior walls in commercial buildings. Exterior is a New Jersey corporation that since at least

A-3510-18

1994 worked along the East Coast of the United States. Techdan is a New Jersey limited liability company. Beginning in 2004, Techdan provided services, like Exterior, in multiple states.

Plaintiffs identified Dunlap as an officer and majority shareholder of Techdan, a claim that he denied at trial, and an officer and shareholder of Exterior. Fisher was identified by plaintiffs as a member, manager, and president of Techdan as well as the majority owner of Exterior. He denied any ownership interest in either company, although he had represented that he held such an interest in order to obtain the workers' compensation insurance policies plaintiffs issued. At trial, Fisher insisted Dunlap owned both companies. Junz, the controller of Techdan and Exterior, testified that Dunlap, not Fisher, solely owned Exterior.

In any event, beginning in March 2004, Fisher, representing himself as the president of Techdan, signed insurance application documents that enabled Techdan to obtain workers' compensation insurance policies from plaintiffs. On March 23, 2005, Techdan's insurance broker, Michael Houlihan, informed Dunlap that in order to add Exterior to Techdan's workers' compensation insurance policy, Techdan and its owner must have a majority ownership in Exterior.

The following day, on March 24, 2005, Fisher filed paperwork stating that he was the president of Techdan and owned 100% of the company. Moreover, he claimed that he owned 51% of Exterior, while Dunlap owned the remaining 49%. In response, Houlihan contacted plaintiffs and requested the addition of Exterior to Techdan's workers' compensation insurance policy. In Houlihan's communications, he explained: that "[a]ll payroll w[ould] continue to run through Techdan"; "[t]he name [Exterior] was purchased for marketing and name recognition"; and that Exterior was "only a shell company that had no payroll exposure."

By December 2005, in a letter to plaintiffs, Junz represented herself as the "controller" of Techdan, explaining that Techdan and Exterior were separate entities that had formed a joint venture.[3] Thereafter, Fisher and Dunlap each wrote to plaintiffs reiterating that Techdan and Exterior had formed a joint venture. Fisher informed plaintiffs that no cash was transferred between Techdan and Exterior.

That same month, despite the claims made to plaintiffs, Dunlap informed Wachovia Bank in writing that funds were transferred between Techdan and

---

[3] Junz executed paperwork where she represented that she was Techdan's controller and treasurer and, also, was Exterior's vice president, controller, and accountant.

Exterior, and that both entities were under his "control and direction." The claims in the December 2005 letter echoed prior claims made by Junz in December 2004 correspondence to Wachovia Bank.

Ultimately, plaintiffs issued three workers' compensation insurance policies to Techdan from 2004 through 2007. When OIFP indicted Techdan and resolved the matter, plaintiffs were unaware of the extent of the fraud; it was discovered as a result of ongoing audits. Exterior was added to Techdan's second workers' compensation insurance policy beginning in March 2005 and the coverage continued through the third policy.

The first policy premium, running from March 12, 2004 to March 12, 2005, was calculated on $456,114 in wages. The tax documents Techdan filed for the same period showed a total payroll of $831,784.61.

The second policy, running from March 12, 2005, and ending on March 12, 2006, issued on the understanding that Techdan paid wages of $498,485. During that time, Techdan's actual payroll, based on filings with the State, came to $1,147,924.24.

The third policy was effective on March 14, 2006 and ended on March 12, 2007. Techdan reported wages of $932,708 to plaintiffs, while reporting wages to the State of $1,348,415.39.

A-3510-18

### III.

On appeal, the Techdan defendants assert the following points of error:

POINT I

THE COURT ABRIDGED AND VIOLATED THE DEFENDANTS' CONSTITUTIONAL RIGHT TO TRIAL BY JURY BY NULLIFYING THE JURY'S VERDICT AND SUBSTITUTING THE COURT'S VERDICT AND VIEW OF THE EVIDENCE ALONG WITH ITS PREFERENCES FOR AND AGAINST THE JURY'S FACT-FINDING; THERE WAS NO GROUND TO DISTURB THE JURY VERDICT BECAUSE THE RECORD CONTAINED SUFFICIENT EVIDENCE TO SUPPORT THE VERDICT.

A.    The Court nullified a sustainable verdict for the individual defendants of zero compensatory damages, thereby violating their right to trial by jury.

B.    The plaintiffs sought and the trial court granted a result by judicial fiat that trespassed on the jury's province, as it went beyond the most dramatic relief that the law would countenance, i.e. granting a new trial—when that standard was neither referenced nor satisfied by the record.

POINT II

THE TRIAL JUDGE EFFECTIVELY GRANTED POST[-]VERDICT RELIEF OF ADDITUR AND REMITTITUR, BY ITS RADICALLY DIFFERENT APPROACH OF REVISING AND NULLIFYING SOME OF THIS JURY'S DECISIONS.  IN SHORT, THE COURT FAILED TO ADHERE TO THE REQUIREMENTS TO JUSTIFY INCREASING A

12

COMPENSATORY DAMAGES AWARD OR THOSE TO VOID A PUNITIVE DAMAGES AWARD.

POINT III

JOINT AND SEVERAL LIABILITY DOES NOT AUTHORIZE AN IMPOSITION OF 100 PERCENT OF THE DAMAGES AGAINST ALL DEFENDANTS EVEN HAD THIS JURY BEEN SO INSTRUCTED AND THEN FOUND ALL TO BE JOINTLY AND SEVERALLY LIABLE.

POINT IV

THE COURT ERRED IN INFORMING THE JURY THAT TECHDAN HAD PLEADED GUILTY, AND THAT THE SUPERIOR COURT OF SOMERSET COUNTY, VIA MOTION DECISION, HAD ALREADY DETERMINED THAT THERE WAS INSURANCE FRAUD AND A FAILURE TO PAY CONTRACTUALLY REQUIRED PREMIUMS.

POINT V

PLAINTIFFS' SUMMATION WITH ITS CALL TO ARMS AND DISPARAGEMENT OF DEFENSE COUNSEL WARRANTED A STRONG CURATIVE INSTRUCTION OR, ALTERNATIVELY, A MISTRIAL. NEITHER WAS GRANTED.

Junz's points on appeal are as follows:

POINT I

THE COURT ABRIDGED AND VIOLATED MS. JUNZ'S RIGHT TO TRIAL BY JURY, BY NULLIFYING THE JURY'S VERDICT AND

SUBSTITUTING THE COURT'S VIEW OF THE EVIDENCE AND THE COURT'S PREFERENCES FOR THE JURY'S DETERMINATION; THERE WAS NO GROUND TO DISTURB THE JURY VERDICT BECAUSE THE RECORD CONTAINED SUFFICIENT EVIDENCE TO SUPPORT THE VERDICT.

A.   The Court nullified a sustainable verdict in Ms. Junz's case of zero compensatory damages, and thereby violated her right to trial by jury.

B.   The plaintiffs sought and the trial court granted a result by judicial _fiat_ that trespassed on the jury's province, as it went beyond the most dramatic relief that the law would countenance, the granting of a new trial—when even that standard was not satisfied by the record.

## POINT II

FOR THE TRIAL JUDGE TO GRANT POST VERDICT RELIEF BY WAY OF ADDITUR, THE COURT WOULD HAVE TO TAKE A RADICALLY DIFFERENT APPROACH THAN SIMPLY REWRITING THE VERDICT AND NULLIFYING THE JURY'S DECISION—AND THE COURT FAILED TO FOLLOW THE PRESCRIBED PATH TO INCREASING A COMPENSATORY DAMAGES VERDICT.

## POINT III

JOINT AND SEVERAL LIABILITY DOES NOT EQUATE WITH AN IMPOSITION OF 100 PERCENT OF THE DAMAGES AGAINST ALL DEFENDANTS HELD JOINTLY AND SEVERALLY LIABLE.

14

POINT IV

THE COURT ERRED IN INFORMING THE JURY THAT TECHDAN HAD PLEADED GUILTY, AND THAT THE SUPERIOR COURT OF SOMERSET COUNTY, VIA MOTION DECISION, HAD ALREADY DETERMINED THAT THERE WAS INSURANCE FRAUD AND A FAILURE TO PAY CONTRACTUALLY REQUIRED PREMIUMS AS IN WORKERS COMP[ENSATION] PREMIUM FRAUD AND A BREACH OF CONTRACT.

POINT V

PLAINTIFFS' SUMMATION IN ITS CALL TO ARMS AND DISPARAGEMENT OF DEFENSE COUNSEL WARRANTED A MISTRIAL.

IV.

All defendants contend that the Comparative Negligence Act (CNA), N.J.S.A. 2A:25-5.1 to -5.8, applied and required the jury to assess a percentage of fault to each party. Pursuant to the CNA, a jury is required to assess "[t]he extent, in the form of a percentage, of each party's negligence and fault" in strict liability and negligence actions, including "civil actions for damages based upon theories of negligence, products liability, professional malpractice[,] whether couched in terms of contract or tort[,] and like theories." N.J.S.A. 2A:15-5.2.

The CNA provides that a party may obtain the "full amount of the damages from any party determined by the trier of fact to be 60% or more responsible for the total damages." N.J.S.A. 2A:15-5.3(a). However, a party may obtain "[o]nly that percentage of the damages directly attributable to that party's negligence or fault from any party determined by the trier of fact to be less than 60% responsible for the total damages." N.J.S.A. 2A:15-5.3(c). Any party who is compelled to pay more than his percentage of damages may seek contribution from the other joint tortfeasors. N.J.S.A. 2A:53A-1; N.J.S.A. 2A:53A-2.

The CNA requires that the trier of fact initially determine the full value of the injured party's damages without regard to negligence or fault. N.J.S.A. 2A:15-5.2(a)(1). Next, the trier of fact must determine each party's negligence or fault in the form of a percentage. N.J.S.A. 2A:15-5.2(a)(2). Afterwards, the court must mold the verdict based on the findings of the trier of fact. N.J.S.A. 2A:15-5.2. Thus, New Jersey's adoption of the CNA "favor[s] [] apportionment of liability among all parties in rough equivalence to their causal fault." Blazovic, 124 N.J. at 97. A plaintiff whose negligence is equal to or less than the defendant's is not barred from recovery, but recovery is

"diminished by the percentage of negligence attributed to the plaintiff by the trier of fact." Id. at 98.

A trial court's decision to apply the CNA is a legal question, reviewed pursuant to a de novo standard. Manalapan Realty, L.P. v. Twp. Comm. of the Twp. of Manalapan, 140 N.J. 366, 378 (1995). On appeal, defendants contend that it was an error for the court to decline to do so. The trial judge considered the CNA inapplicable because plaintiffs were blameless, and the verdicts signified that defendants engaged in a fraudulent scheme.

Since the adoption of the CNA in 1973, however, the case law has extended its reach to encompass more than negligence and strict liability actions. For example, when the Court in Suter v. San Angelo Foundry & Machine Co., 81 N.J. 150, 161 (1979), held that the CNA applied to strict liability actions, it recognized that restricting the CNA to negligence actions would undermine the legislative intent of mitigating the unfairness of common law contributory negligence.

Subsequently, in Blazovic, the Court explained that the CNA was intended to cover fault in more than just instances of negligence—including litigation involving wanton, willful, and reckless conduct. 124 N.J. at 99-101, 106. Importantly, the CNA "applies to conduct characterized as intentional."

Id. at 100, 106; see also McCann v. Lester, 239 N.J. Super. 601, 610 (App. Div. 1990) (stating that "the labels attached by the law to various types of conduct should not thwart the principle that it is the overall fault of the parties which is to be measured").  Under the CNA, intentional wrongdoing is only different in degree, not in kind, from claims of negligence or willful and wanton conduct.  Blazovic, 124 N.J. at 106.  Thus, the differences between negligence and intentional conduct do not preclude application by the jury.  Id. at 107.  Responsibility for the injuries a plaintiff sustained are to be apportioned according to each party's degree of fault, including the fault of intentional tortfeasors.  Ibid.

Since Blazovic, courts have continued to apportion fault among parties, including among intentional tortfeasors and negligent defendants.  Grubbs v. Knoll, 376 N.J. Super. 420, 441 (App. Div. 2005); see also Bonpua v. Fagan, 253 N.J. Super. 475, 479 (App. Div. 1992) (stating that a tortfeasor's criminal conviction does not bar the tortfeasor from relying upon the CNA in subsequent civil action).  As the Court said in Gennari v. Weichert Co. Realtors, 148 N.J. 582, 608-09 (2007), the CNA applies to negligence, strict liability, intentional torts, and wanton conduct.  Gennari applied the CNA to an action alleging the intentional tort of common law fraud and claims under the

Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -91. Id. at 608-11; see also Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 176 (2006) (stating that "the closest statutory analogue to IFPA in New Jersey is the [CFA].").

Thus, the trial judge should have applied the CNA, and required the jury to determine "the extent, in the form of percentage, of each party's negligence or fault." N.J.S.A. 2A:15-5.2(a)(2). The claims at issue included fraud, breach of contract, and conspiracy. The determination of fault under the CNA encompasses those intentional torts. See Gennari, 148 N.J. at 608-09 (extending the application of the CNA to fraud and the CFA); see also Dunn v. Praiss, 139 N.J. 564, 577-78 (1995) (explaining that in breach of contract action plaintiff's conduct will be evaluated, and plaintiff must exercise reasonable care to avoid harm); Velop, Inc. v. Kaplan, 301 N.J. Super. 32, 41, 58 (App. Div. 1997) (stating that contractual fault can be compared to other types of tortious fault when damages for breach of contract are the same as damages for tort theories); Giri v. Rutgers Cas. Ins. Co., 273 N.J. Super. 340, 352 (App. Div. 1994) (stating that fault should be apportioned between malicious civil prosecution and breach of contract alleged to have caused the same damages).

Notably, the supplemental notes to <u>Model Jury Charges (Civil)</u>, 7.16, "Apportionment where the acts, or inactions, of an individual or entity substantially contributed to the alleged harm" (approved Oct. 1991; rev. Sept. 2018), explain the instruction should be given in matters concerning intentional torts such as fraud and breach of contract. The charge itself states:

> In this case, [<u>one party</u>] alleges that the acts of [<u>individual or entity subject to allocation</u>] were negligent, willful, wanton or malicious, or intentional. If you find that the act, or failure to act, by [<u>individual or entity subject to allocation</u>] was negligent, willful, wanton or malicious, or intentional conduct and that his/her/its action, or inaction, substantially contributed to the harm, then you are to apportion the fault of all individuals and entities subject to allocation. In other words, you are to apportion the total responsibility of each individual or entity, depending on the degree of fault you assess to each individual or entity, including the fault attributable to an individual or entity whose acts are negligent, willful, wanton, malicious, in reckless disregard of one's safety, or intentional.
>
> [<u>Ibid.</u> (alterations in original).]

Therefore, the trial judge erred by allocating 100% of the damages to all defendants based solely on the jury's unallocated findings of liability. A finding of liability is not equivalent to an allocation of fault. <u>See</u> <u>Ryan v. KDI Sylvan Pools, Inc.</u>, 121 N.J. 276, 292 (1990) (stating the terms liability and fault are "not synonymous or interchangeable"). The court should have:

20

included plaintiffs on the jury verdict sheet; told the jury to calculate the total amount of damages that would be recoverable by the injured parties regardless of any consideration of fault pursuant to N.J.S.A. 2A:15-5.2(a)(1); and then allowed the jury to apportion fault among all of the parties, including plaintiffs, in the form of percentages pursuant to N.J.S.A. 2A:15-5.2(a)(2). Afterwards, the court should have molded the verdict to correspond with each party's properly apportioned fault. N.J.S.A. 2A:15-5.2; see also Ryan, 121 N.J. at 291-93 (explaining how to mold a verdict).

The trial judge's reasoning that Blazovic and the CNA did not apply because plaintiffs were blameless was mistaken. We have long since recognized that fault must be allocated among defendants even when a plaintiff is free from fault, either on the facts or as a matter of law. Lee's Hawaiian Islanders, Inc. v. Safety First Prods., Inc., 195 N.J. Super. 493, 505 (App. Div. 1984). When a plaintiff is included on the verdict sheet, the jury may still apportion zero fault to them based upon the circumstances of the case.

Moreover, the court's failure to ask the jury to assess a percentage of fault among the parties implicates whether the parties can seek contribution from one another. The CNA modified the Joint Tortfeasors Contribution Law (JTCL), N.J.S.A. 2A:53A-2, which apportions fault among joint tortfeasors.

21

Blazovic, 124 N.J. at 103. After the passage of the CNA, joint tortfeasors no longer shared fault on a pro rata basis, but instead fault was determined by the trier of fact in the form of percentages. Ibid. Thus, if a tortfeasor was compelled to pay more than his or her fair share, he or she could seek contribution from the other tortfeasors. Ibid. As a result, the CNA and the JTCL work together to provide the framework for allocating fault when multiple parties are alleged to have contributed to a plaintiff's harm. Jones v. Morey's Pier, Inc., 230 N.J. 142, 160 (2017). Here, without the allocation of fault being made by the jury, defendants are unfairly prejudiced.

V.

The trial court also erred when it failed to charge the jury as to the "ultimate outcome" under IFPA. When a jury is misinformed or ill-informed about the effect of its percentage allocation of fault, it is more likely to make unwarranted assumptions about the effect of the verdict on the parties. Roman v. Mitchell, 82 N.J. 336, 345 (1980). In Fischer v. Canario, 143 N.J. 235, 251 (1996), the Court explained that the "primary justification for giving a jury an ultimate outcome charge is that it informs the jury about the impact of its decision." The jury "should be given an ultimate outcome charge so that its deliberations on percentages of negligence will not be had in a vacuum, or

22

possibly based on a mistaken notion of how [a] statute operates." Roman, 82 N.J. at 345.

In Wanetick v. Gateway Mitsubishi, 163 N.J. 484, 490 (2000), the Court considered whether a jury must be instructed as to the ultimate outcome in a case regarding the CFA, in which compensatory damages are trebled and counsel fees awarded. Concluding that jurors would benefit from being so advised in fulfilling their fact-finding role and avoiding confusion, the Court held a jury "should be informed of the legal effect of their actions so that their deliberations 'will not be had in a vacuum, or possibly based on a mistaken notion of how the statute operates.'" Id. at 494 (quoting Roman, 82 N.J. at 345). The notion behind the decision is that the jury will better titrate their calculation of monetary awards and of punitive measures if told that compensatory damages will be trebled and counsel fees awarded. Id. at 495. In fact, the Court quoted from our earlier opinion in the same case, stating that knowing a judge will treble damages and award counsel fees will operate "to prevent a jury from inflating the compensatory award or awarding punitive damages on another count to make its outrage [at the CFA violation] known." Id. at 495-96 (citing Wanetick v. OCT P'ship, 318 N.J. Super. 156, 165-66 (App. Div. 1999)). Thus, the ultimate outcome charge in a case with an

idiosyncratic method of fixing compensation, like the CFA, or as here with the IFPA, "enhances the prospect that jurors will arrive at the correct verdict for the right reasons." Id. at 496.

Thus, the trial court erred when it reversed course from the pre-trial decision on summary judgment to provide the instruction. The jury should have had the legal effect of a verdict explained. Failure to do so constituted a miscarriage of justice.

VI.

As to the overall jury charge, it is true that defendants failed to: raise these issues prior to trial; include the ultimate outcome charge in their proposed jury instructions; request such a charge during the charge conference; object to the absence of the ultimate outcome charge; and object to the absence of the allocation of percentages of fault on the jury sheet. The absence of objections to the jury charges indicates that counsel did not believe that error or prejudice stemmed from the charge. Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 523 (2011).

Additionally, defendants' failure to object prevented the trial court from correcting any confusion or errors in the jury charge in a timely manner. Bradford v. Kupper Assocs., 283 N.J. Super. 556, 573-74 (App. Div. 1995)

(stating failure to object prevents court from timely remedying confusion). Also, pursuant to <u>Rule</u> 1:7-2, "[e]xcept as otherwise provided by [<u>Rule</u>] 1:7-5 and [<u>Rule</u>] 2:10-2 (plain error), no party may urge as error any portion of the charge to the jury or omissions therefrom unless objections are made thereto before the jury retires to consider its verdict, but opportunity shall be given to make the objection in open court, in the absence of the jury."

However, a correct and proper jury charge is essential to a fair trial. It constitutes a "road map that explains applicable legal principles, outlines the jury's function, and spells out 'how the jury should apply the legal principles charged to the facts of the case at hand.'" <u>Toto v. Ensuar</u>, 196 N.J. 134, 144 (2008) (quoting <u>Viscik v. Fowler Equip. Co.</u>, 173 N.J. 1, 18 (2002)).

Here, defendants raised the issues presented on appeal after the jury returned its verdict and after the court entered final judgment on the verdict on February 1, 2019. In particular, defendants filed motions for reconsideration pursuant to <u>Rule</u> 4:49-2 (motions to amend or alter a judgment or order) or, in the alternative, for a new trial pursuant to <u>Rule</u> 4:49-1 (pertaining to new trials and amendments of judgments).

The failure of the court to inform the jury that they must allocate a percentage of fault to all parties was a critical omission, however, as was the

court's failure to give the ultimate outcome charge. These omissions were prejudicial errors compounded when the judge then molded the verdict according to his perception of the jury's view, which is itself impermissible. See Kassick v. Milwaukee Elec. Tool Corp., 120 N.J. 130, 135-36 (1990) (explaining that court cannot mold verdict based upon its own opinion of the jury's intent).

"[J]udges are admonished not to readily substitute their own judgment for that of the initial factfinder." Thomas v. Toys R Us, Inc., 282 N.J. Super. 569, 579 (App. Div. 1995). That occurred in this case. The court substituted its own judgment for that of the jury, concluding that all defendants would be jointly and severally liable for 100% of the compensatory damages because they were involved in a scheme to defraud plaintiffs.

The court was required to apply the CNA and have the jury allocate fault to all parties in the form of percentages. The failure to do so, along with the absence of the ultimate outcome charge, establishes "clearly and convincingly . . . a miscarriage of justice under the law." R. 4:49-1(a).

VII.

Defendants also contend that the court improperly nullified the jury's verdict with regard to compensatory damages. They further argue that the

26

court engaged in additur without the proper analysis, by altering the jury's intent when assessing the quantum of damages against each defendant.

For compensatory damages, defined on the verdict sheet as the amount of lost premiums, the jury awarded plaintiffs a total of $756,990, broken down as $454,600 against Techdan and $227,330 against Exterior. Additionally, the verdict sheet explained that any amount the jury awarded against Techdan would be in addition to the $75,000 prior obligation by reason of the guilty plea to theft by deception.

The jury did not assign any compensatory damages to Dunlap, Fisher, or Junz. However, with regard to Dunlap, the verdict sheet explained that $75,000 was previously determined to be due by reason of the consent judgment filed in connection with Techdan's guilty plea, thus any damages against Dunlap would be in addition to the $75,000 amount.

The jury did not assign punitive damages to either Techdan or Exterior. It assessed punitive damages against Dunlap in the amount of $200,000, Fisher in the amount of $10,000, and Junz in the amount of $45,000.

The court held that all five defendants were liable, jointly and severally, for the total amount of compensatory damages, $756,990, because the jury concluded that they were liable for common law fraud, and aiding and

27

abetting. Thus, Dunlap, Fisher, and Junz were liable for the compensatory damages imposed on Techdan and Exterior and, also, the $75,000 assessed against Techdan and Dunlap for a total of $756,990. The judge held Dunlap, Junz, Techdan, and Exterior liable, jointly and severally, for the full amount of compensatory damages because of the jury's verdict finding they committed workers' compensation fraud, insurance fraud, and a pattern of insurance fraud. Dunlap was liable for the compensatory damage award attributed to Techdan and Exterior because he was liable as a director, and the jury decided that the corporate veil should be pierced.

Although the court discussed the prior grant of summary judgment against certain defendants, it did not change the jury's liability findings. The judge reiterated these findings only when discussing its rationale for imposing compensatory damages against all five defendants.

For example, the court explained that the partial summary judgment order held all five defendants committed workers' compensation fraud and were jointly and severally liable for a minimum of $75,000 plus reasonable costs and attorneys' fees. Thus, all five defendants were liable to plaintiffs for compensatory damages, reasonable costs, and attorneys' fees for the workers' compensation insurance fraud count.

The judge said the prior summary judgment order held that Techdan, Exterior, Dunlap and Fisher were liable to plaintiffs for compensatory damages, reasonable costs, and attorneys' fees for the IFPA violation. While summary judgment was not granted against Junz as a matter of law, the jury subsequently concluded that Junz was liable for the IFPA violation. Therefore, all five defendants were liable to plaintiffs for compensatory damages, reasonable costs, and attorneys' fees for the IFPA violation.

When discussing the compensatory damages against Fisher, the judge did not allocate any damages to him for workers' compensation fraud or the IFPA violation consistent with the jury's conclusions that he was not liable for those counts, despite the prior partial summary judgment order. Finally, the judge opined that Dunlap and Junz were "personally liable" due to the jury's verdict that they committed civil conspiracy.

The judge further opined that the jury's verdict that Dunlap, Junz, Techdan, and Exterior engaged in a pattern of insurance fraud subjected them, jointly and severally, to IFPA treble damages, N.J.S.A. 17:33A-7(b). Plaintiffs were therefore entitled to trebled compensatory damages totaling $2,270,970[4] from Dunlap, Junz, Techdan, and Exterior. The judge entered compensatory

---

[4] This figure is reached upon multiplying $756,990 by a factor of three.

A-3510-18

damages in favor of plaintiffs against Fisher only to the extent of $756,990, because the jury did not find him liable for the IFPA violation.

The court vacated the punitive damages awards against Dunlap, Fisher, and Junz because he was uncertain that the factual underpinnings that supported the award were not commingled with the jury's conclusion that Dunlap, Junz, Techdan, and Exterior engaged in a pattern of insurance fraud. Additionally, the court vacated the punitive damages against Fisher, finding his actions were not malicious, wanton, or willful, since he merely "did what Dunlap told him to do."

The court calculated the amount of attorneys' fees at $922,672.67 and the amount of costs at $96,682.87. Once trebled, attorneys' fees totaled $2,768,018.01 and costs $290,048.61. Fees and costs were assessed against Techdan, Exterior, Dunlap, and Junz, jointly and severally, since IFPA, N.J.S.A. 17:33A-7, mandates trebling of costs and attorneys' fees when a pattern of insurance fraud has been demonstrated.

A jury verdict is entitled to substantial deference. Risko, 206 N.J. at 521. It should not be set aside by the trial judge unless "after canvasing the record and weighing the evidence, . . . the continued viability of the judgment would constitute a manifest denial of justice." Baxter v. Fairmont Food Co.,

74 N.J. 588, 597-98 (1977). Moreover, the trial court should not alter the jury's verdict unless it is "clearly against the weight of the evidence." Caldwell v. Haynes, 136 N.J. 422, 432 (1994). To overturn a jury verdict, it "must shock the judicial conscience." Ibid. Importantly, "a trial judge is 'not [to] substitute his [or her] judgment for that of the jury merely because he [or she] would have reached the opposite conclusion . . . .'" Risko, 206 N.J. at 521 (alterations in original) (quoting Dolson v. Anastasia, 55 N.J. 2, 6 (1969)). A judge "is not a thirteenth and decisive juror." Dolson, 55 N.J. at 6.

Without allocating fault in the form of percentages pursuant to N.J.S.A. 2A:15-5.2, the court erred by assigning 100% of the damages to parties who were not specifically assigned at least 60% of the fault. The court improperly equated a finding of liability for a 100% allocation of fault.

The judge substituted his own conclusions for those of the jury. He said "[t]he quantum and quality of the evidence before the jury was overwhelming in favor of [plaintiffs]" and that "[t]here [was] no question that the individual defendants share joint and several liability with the corporate defendants." The judge opined that the jury "clearly contemplated" that Dunlap, Junz, and Fisher would share equally in the compensatory damages due to the liability finding for aiding and abetting. The court also assumed that imposition of the

31

full amount of compensatory damages was contemplated by the jury when it held Dunlap liable for the damages assigned to Techdan and Exterior via director liability and their decision to pierce the corporate veil.

The imposition of the full amount of compensatory damages against all defendants, however, was based upon faulty jury instructions as to allocation, the missing ultimate outcome charge, and the absent calculation of percentages of fault. Additionally, defendants also claim that the court engaged in additur as a vehicle for undoing the jury's verdict.

Recently, the Court addressed the issue of additur in Orientale v. Jennings, 239 N.J. 569, 574 (2019). Additur is the court's power to increase the jury's damage award if such an increase is sustained by the evidence. Id. at 574. When using additur, the court must attempt to determine an amount that a reasonable jury would have awarded, if the jury had been properly instructed. Id. at 593-94. However, the parties must agree that the amount that the court selects is reasonable. Id. at 590. If the parties cannot agree, then the case proceeds to a new damages trial. Ibid.

Here, the court summarily concluded that the jury's liability findings, coupled with references to joint and several liability in the jury instructions, intended to impose 100% of the compensatory damages on all defendants.

A-3510-18

Obviously, the amount of the court's adjusted damage award was not agreed upon by the parties. Additur in these circumstances was error.

Next, Junz and the Techdan defendants complain that the court's decision effectively held them accountable for a $5 million verdict. Defendants include in the computation trebled attorneys' fees and costs assessed against Dunlap, Junz, Techdan, and Exterior.

Unquestionably, the IFPA entitles the claimant to collect attorneys' fees and costs as compensatory damages. N.J.S.A. 17:33A-7(a), (b). The jury found Dunlap, Junz, Techdan, and Exterior liable for IFPA violations and a pattern of insurance fraud. Thus, in theory, the award of attorneys' fees against Junz and the Techdan defendants was proper. On appeal, however, Junz and the Techdan defendants argue that the total amount of attorneys' fees and costs was calculated in error. We do not address the issue—which will have to be revisited based on the next trial's outcome.[5]

In sum, the court erred in assessing the quantum of damages. Because the court failed to have the jury assign percentages of fault, the molding of the

---

[5] The jury should not be charged as to punitive damages until after the liability and compensatory damages verdict has been returned. Baglini v. Lauletta, 338 N.J. Super. 282, 304 (App. Div. 2001).

verdict was flawed. The court substituted its own conclusions for those of the jury with regard to the allocation of the damages by equating the finding of liability with the imposition of the full amount of compensatory damages against each party.

VIII.

The jury's verdict was fatally flawed because the CNA should have informed their deliberations and the verdict sheet. Additionally, the jury should have understood the consequences of their verdict by way of an ultimate outcome charge. Therefore, "it clearly and convincingly appears that there was a miscarriage of justice under the law," and a new trial must be conducted. R. 4:49-1(a). This is warranted despite the fact the issue was not raised until after the entry of the verdict. See ibid.

Reversed and remanded for a new trial.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3510-18